SAM MENCHER, as Chairman of Furriers Joint Council of New York, and as Assignee of IDA WEISS and Others, et al., Appellants, *v.* HARRY WEISS, Respondent.

Argued May 19, 1953; decided July 14, 1953.

*Ralph Shapiro* and *Harold I. Cammer* for appellants. I. Respondent's own execution of an agreement which described him as a " member " and which binds " members " individually binds him. (*Metzger* v. *Ætna Ins. Co.,* 227 N. Y. 411; *Pimpinello* v. *Swift & Co.,* 253 N. Y. 159; *Kerfoot* v. *Cromwell Mound Co.,* 115 Ill. 520.) II. Even if respondent executed the agreement only in a representative capacity, he is individually liable because he thereby caused the corporation to represent itself as authorized to bind him as a " member ". (*Shoenthal* v. *Bernstein,* 276 App. Div. 200; *Hernandez* v. *Brookdale Mills,* 194 App. Div. 369; *Dahlstrom* v. *Gemunder,* 198 N. Y. 449; *Prioletti* v. *Bowman,* 194 Misc. 752, 755, 275 App. Div. 1067; *Bassett* v. *Perkins,* 65 Misc. 103; *Hall* v. *Lauderdale,* 46 N. Y. 70.) III. Only by holding respondent liable will effect be given to all parts of the agreement. (*Kratzenstein* v. *Western Assur. Co.,* 116 N. Y. 54; *Codman* v. *Adamson,* 130 App. Div. 317; *Esselstyn* v. *McDonald,* 98 App. Div. 197; *Standard Underground Cable Co.* v. *Stone,* 35 App. Div. 62; *Feigenbaum* v. *Hizsnay,* 187 App. Div. 126; *Electric Carriage Call & Specialty Co.* v. *Herman,* 67 Misc. 394; *Lewis* v. *Cable,* 107 F. Supp. 196.)

' *Sidney E. Katz* for respondent. I. Respondent did not individually sign the alleged agreement and is not personally liable thereon. (*Shoenthal* v. *Bernstein*, 276 App. Div. 200; *Hall* v. *Lauderdale*, 46 N. Y. 70; *Thurston* v. *Cornell*, 38 N. Y. 281; *Hernandez* v. *Brookdale Mills*, 194 App. Div. 369.) II. The alleged contract lacked consideration as to respondent. (*Schlegel Mfg. Co.* v. *Cooper's Glue Factory*, 231 N. Y. 459.)

CONWAY, J. The plaintiffs commenced this action to recover wages, vacation pay, and welfare and pension benefits due under a collective labor agreement entered into by the Furriers Joint Council of New York, a labor union.

Plaintiffs are, respectively, (1) the chairman of the union suing on behalf of the union as payee of the vacation pay, (2) the chairman of the union suing as assignee of the wage claims, and (3) the trustees of the health and retirement funds of the Fur Manufacturing Industry suing for the welfare and pension claims. The defendant, Harry Weiss, the president of Weiss & Schwartz Fur Corp., is sued in his individual capacity, the theory of the action being that he was bound by the agreement in that capacity. He has interposed a general denial.

There is no dispute as to the fact that the claims alleged in the complaint totaling $3,057.26 are due and owing plaintiffs. Nor is there any question but that the Weiss & Schwartz Fur Corp., of which defendant Weiss was president, was clearly obligated by the agreement to satisfy the claims. However, the corporation is insolvent and the plaintiffs seek redress from defendant Weiss. Hence, the sole issue presented by the case is the narrow one of whether, under the terms of the agreement, Weiss is bound personally and individually to plaintiffs.

The contract is contained on a multigraphed form. The *prefatory* clause thereof recites that it is " made and entered into by and between HARRY WEISS [defendant here], BEN SCHWARTZ and HARRY HOROWITZ, comprising the firm of WEISS & SCHWARTZ FUR CORP. * * * and the FURRIERS JOINT COUNCIL OF NEW YORK * * *."

The *body* of the agreement provides that it " * * * shall apply to and bind the parties thereto, their respective members and, if an employer member is a corporation, the individual members thereof."

The agreement was signed at the *end* as follows:

" WEISS & SCHWARTZ FUR CORP.

Member HARRY WEISS Pres.

Member BEN SCHWARTZ Sec.

HOROWITZ-SCHWARTZ

Working Partners

FURRIERS JOINT COUNCIL OF NEW YORK,

LOCALS 101, 105, 110, 115, 120, 125 AND 70

OF THE INTERNATIONAL FUR & LEATHER WORKERS

UNION OF U. S. & CANADA, CIO

By J. HINDUS "

The corporate name " WEISS & SCHWARTZ FUR CORP." was affixed by a rubber stamp. The word " Member " is printed as part of the form and the signature of Weiss followed by the abbreviation " Pres." is in the handwriting of Weiss.

The parties are agreed that Weiss signed the agreement in a representative capacity and bound the corporation thereby. The plaintiffs argue, however, that he did not sign in a representative capacity alone, but in a dual capacity as president, in behalf of the corporation, and also as a " Member " of the corporation, i.e., individually as well.

We commence with the rule that where there is a disclosed principal-agent relationship and the contract relates to a matter of the agency, the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal. *(Keskal* v. *Modrakowski,* 249 N. Y. 406; *Ell Dee Clothing Co.* v. *Marsh,* 247 N. Y. 392; *Hall* v. *Lauderdale,* 46 N. Y. 70, 74.)

Equally important, however, is the principle that the signer of an instrument expressive of a jural act, is conclusively bound thereby. *(Pimpinello* v. *Swift & Co.,* 253 N. Y. 159, 162–163.)

Weiss affixed his signature to an agreement which expressly stated that it was made and entered into by and between Harry Weiss and two others comprising the firm of Weiss & Schwartz Fur Corp. as party of the first part and the union as party of the second part. The body of the instrument, in turn, expressly stated that if the employer were a corporation, the agreement would bind the individual members thereof. The defendant

argues that no definition of the word " member " is to be found in the agreement or otherwise in the record. That is true but, as we believe on this record, of no moment.

Weiss testified that he was neither a director nor a stockholder but merely an officer — the president. So the question presented is does the word " member " include an officer who is neither a director nor a stockholder? It seems to us that Weiss has himself furnished the answer. A clause in the body of the instrument notified him that individual members of a corporation were to be bound by the agreement. With that knowledge, and, as pointed out above, he must be charged with it, he affixed his signature to the agreement on a line to the immediate left of which is the printed word " Member ". By so doing he acquiesced in and accepted the designation of " Member " of the contracting employer. Had he wished not to be so described he could have stricken out the word " Member ". No one will dispute that by signing but once Weiss could have bound himself in two capacities, i.e., individual and representative, had he added to his signature the words " individually and as president ". That is what he has effectively done by signing as president, and, at the same time, permitting the designation " Member " to be applied to him. It is as though he had added those words to his signature. It cannot be said that by writing the abbreviation for the word president after his name defendant nullified, cancelled or wrote out of the contract the descriptive word " Member ". Perhaps such an argument would have force if under the terms of the agreement defendant could be bound in one capacity only. In such case it might well be that the descriptive word " Pres." added by defendant to his signature would control. However, the body of the agreement states, in clear language, the intention of the parties that Weiss be bound in a dual capacity. There is no reason why that intention should not be given full effect. The word " Member " was not placed alongside of the signature as an afterthought. Rather, it was printed there as an integral part of the multigraphed form contract in order to accomplish that which was expressly stated in the body of the contract, viz., that if the employer were a corporation not only the corporation but also the individual members were to be bound thereby.

Those who contract with each other may write their own glossary or dictionary. Furriers may attach in their contracts a different meaning to member of a corporation than legislators. The latter have defined " member of a corporation " as including " a stockholder of record having the right to vote ". (General Corporation Law, § 3, subd. 15.) What the union wanted was some *responsible person,* individual or corporate, who would pay in case of breach of contract.

Further evidence that the intention of the parties was that Harry Weiss should be bound personally and individually is to be found in the fact that the prefatory clause specifically names Harry Weiss. The party of the first part is not described as the Weiss & Schwartz Fur Corp., but as Harry Weiss, Ben Schwartz and Harry Horowitz comprising that corporation. Weiss, the active president of the firm, denied being either a director or stockholder. Therefore, although he occupied the most important office in the corporation and was actively engaged therein in the conduct of the business he had no investment which he could lose through irresponsible business practices. The following testimony of Weiss is illuminating since it discloses the existence of the very situation which it was the purpose of the union to guard against and eliminate:

" Q. Was your son a director of Weiss & Schwartz Fur Corp.? A. What son? I got three sons. What is the name?

" Q. Were any of your sons a director of Weiss & Schwartz Fur Corp.? A. I wouldn't remember that.

" Q. You wouldn't remember? A. I wouldn't remember now.

" Q. Were any of your sons a stockholder of Weiss & Schwartz Fur Corp.? A. They were only covered up for the union purposes that we told them. Horowitz wasn't even there as a member in the firm. This is only cover-up stuff for the union."

That means that Weiss and Schwartz, the two men who signed the agreement, were the only ones with any interest in the corporation. Interesting, too, is the fact that Weiss said that Horowitz was not even a " member " in the firm — the Weiss & Schwartz Fur Corp. It would seem from such statement that defendant understood the meaning of the word " member " as used in the agreement.

There can be no doubt but that the union drafted this contract with a view to protecting its members against loss of wages,

vacation pay and welfare payments by financially irresponsible corporate employers such as the Weiss & Schwartz Fur Corp., which engaged in " cover-up stuff for the union." The defendant, as a reasonably prudent business man with thirty-eight years' experience in the fur industry, could not have failed to realize that fact. The body of the agreement informed him that members of a corporation were to be personally bound. The defendant signed the agreement exactly as drawn thereby indicating his willingness to be characterized as a " Member " and further, his willingness to assume the liability of a member as stated in the agreement. To hold otherwise would be to deny effect to and frustrate the legitimate object of the agreement.

The defendant, in arguing against the imposition of individual liability, points to the fact that he testified that at the time of the execution of the instrument he did not intend to sign in an individual capacity but only on behalf of the corporate employer. That testimony was received, over the objection of the plaintiffs, on the theory that " where there is a lot of ambiguity, or something that is confusing    *    *    *    it may be permitted by parole evidence to show what the intention of the parties were." It seems to us that the facts here did not warrant the reception of such oral evidence. As stated above the agreement quite obviously was intended to bind members of the Weiss & Schwartz Fur Corp. The defendant, chargeable with full knowledge of the union's purpose in that regard signed the agreement as a member. That the defendant secretly or mentally intended to be bound in a representative capacity only is of no importance. " [I]t is well-established contract law that in determining whether the parties possessed the necessary intention to contract, an objective test is generally to be applied. That means, simply, that the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling. Thus, in *Hotchkiss* v. *National City Bank of New York* (200 F. 287, 293, L. Hand, J., affd. 201 F. 664, affd. *sub nom. National City Bank* v. *Hotchkiss*, 231 U. S. 50), it was said: ' A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when

he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort.' (See, also, *Amend* v. *Hurley,* 293 N. Y. 587, 596; *Porter* v. *Commercial Cas. Ins. Co.,* 292 N. Y. 176, 183–184.) '' (*Matter of Ahern* v. *South Buffalo Ry. Co.,* 303 N. Y. 545, 560–561.) So here, Weiss' contention that he did not intend to be bound personally is unavailing in the face of the clear manifestation of intention by the parties that he be so bound.

Defendant further argues that the agreement lacked consideration as to him. That contention is without merit. Labor agreements such as that here are entered into between employers and employees for their mutual benefit. The union agreed not to '' authorize or sanction any strike during the term of this agreement '' and all disputes between the parties arising thereunder were to be adjusted within forty-eight hours through direct negotiations between the parties. In the event of their failure to adjust the dispute in that fashion it was to be submitted to arbitration. These promises by the union were certainly of benefit to the employer. That the employees may or may not have received more benefits under the agreement than they conferred on the employer is of no consequence since the law does not weigh the quantum of consideration. '' So long as it is something of real value in the eye of the law, whether or not the consideration is adequate to the promise is generally immaterial in the absence of fraud. The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced. It is competent for the parties to make whatever contracts they may please, so long as there is no fraud or deception or infringement of law.'' (17 C. J. S., Contracts, § 127, pp. 474–475.) The fact that the promises of the employees ran to the corporation is sufficient to support defendant's promise to be personally liable since it is fundamental that a benefit flowing to a third person or legal entity constitutes a sufficient consideration for the promise of another. (See 17 C. J. S., Contracts, § 89.) Moreover, it may be said that the defendant himself received benefits under the contract. As president of the corporation he was interested in seeing to it that the agreement was entered into in order

that a harmonious collective bargaining relationship come into being and his position as president be a secure and profitable one. It is clear that the union was prepared to execute the agreement only if the members of the corporation were bound personally. Defendant agreed to those terms, and accepted the benefits of the agreement given in reliance upon his promise. He may not now argue that the agreement is unsupported by consideration.

The judgments should be reversed and judgment directed for plaintiffs as prayed for in the complaint, with costs in all courts.

Dye, J. (dissenting). I dissent and vote to affirm. We all agree that the bargaining agreement executed in the name of Weiss & Schwartz Fur. Corp., a new York stock corporation, by its president, Harry Weiss, and its secretary, Ben Schwartz, was fully binding on the corporation.

We disagree as to whether the signature of Harry Weiss concededly affixed in his representative capacity as president of the corporation also had the effect of binding him personally so as to render him individually liable for the default of the corporation in meeting its contract obligation to pay its employees vacation time. The answer depends on the effect to be given the word " Member " appearing as part of the printed form contract. A majority are about to decide that the juxtaposition of the printed word " Member " to the corporate signature creates a personal liability.

Although the contract document supplies no definition of the term " members " as used therein and although the usual meaning attributed to a member of a stock corporation is a stockholder entitled to vote (General Corporation Law, § 3, subd. 15), a majority nonetheless assert that " Furriers may attach in their contracts a different meaning to member of a corporation than legislators "; that " What the union wanted was some *responsible person,* individual or corporate, who would pay in case of breach of contract." (P. 6.)

On this record we must disagree with such premise. We do not deny the desirability of the salutary purpose to be served but as the court at Trial Term succinctly pointed out: " it is the contract which is before the court that must be construed and not a contract which could have effectively done so."

It is axiomatic that to bind one as an individual, acting in a representative capacity, the proof must be clear and convincing that he intended to assume and create such an individual obligation — it is not what the other party may have thought or expected — absent which the parties with whom he deals may look only to the principal for performance (*Keskal* v. *Modrakowski,* 249 N. Y. 406; *Ell Dee Clothing Co.* v. *Marsh,* 247 N. Y. 392). As we long ago said, and have had no occasion to repudiate: "When an agency is disclosed, and the contract relates to the matter of the agency, and is within the authority conferred, the agent will not be personally bound, unless upon clear and explicit evidence, of an intention to substitute, or to superadd his personal liability for, or to, that of the principal." (*Hall* v. *Lauderdale,* 46 N. Y. 70, 74.)

Here the document on its face indicates that it was signed in a representative capacity only, bearing, as it does, the corporate name, the signature of the authorized officer and his designated title of president. The juxtaposition of the printed word "Member" appearing on the document in front of the signature does not change the situation so as to create individual liability, particularly, since the parties made no attempt to define the word "member" and in the light of the uncontradicted testimony that at the time of execution of the instrument Weiss intended to sign only on behalf of the corporation. The latter testimony, although received over objection, was entirely competent since the plaintiff was attributing significance to the word "Member" so as to qualify the signature as creating individual liability (*Thurston* v. *Cornell,* 38 N. Y. 281, 287; *Hernandez* v. *Brookdale Mills,* 194 App. Div. 369, 380).

The remaining point — that the agreement, when executed, had the effect of binding Weiss as a "member" because the corporation was acting as his agent — is wholly without merit under the circumstances of this case. It is true that a corporation may act as agent for an individual principal (*Jones* v. *Gould,* 200 N. Y. 18; *Meyer* v. *Redmond,* 205 N. Y. 478; *Shoenthal* v. *Bernstein,* 276 App. Div. 200). However, such rule is not available here. We are bound by the language of this contract. We may not supply deficiencies. There is nothing within its terms indicating that the Weiss & Schwartz Corp. was acting as

agent for Weiss as a disclosed principal, absent which Weiss may not be held in his individual capacity.

If this be not enough, it may also be noted that no consideration whatsoever runs in favor of Harry Weiss as an individual, absent which no enforcible obligation was created.

The judgment appealed from should be affirmed, with costs.

LEWIS, Ch. J., DESMOND, FROESSEL and VAN VOORHIS, JJ., concur with CONWAY, J.; DYE, J., dissents in opinion in which FULD, J., concurs.

Judgments reversed, etc.