■ In the Matter of the Arbitration between SIDNEY B. ELLIOTT et al., Appellants, and CENTRALA HANDLU ZEGRANICZNEGO (PAGED), Respondent.

APPEAL from an order of the Supreme Court at Special Term, entered July 19, 1965 in New York County, which denied a motion by petitioners for an order granting a trial of the issue as to whether a valid agreement was made between the parties and for a stay of arbitration.

MEMORANDUM BY THE COURT. Order entered on July 19, 1965 denying motion for a stay of arbitration pending a trial of certain issues affirmed, with $30 costs and disbursements to respondent. Petitioner raised several objections to the notice of arbitration, only one of which merits any consideration. The petitioner claims that he individually, as distinct from a corporation which he owns and controls, never agreed in writing to arbitrate. It appears that petitioner's corporation bought furniture for resale from respondent, a Polish corporation. The latter was the corporation's chief source of supply. Petitioner's corporation was largely indebted to respondent. Petitioner went to Poland and, after negotiation, a written agreement providing for payment of arrears, continued credits, and adjustment of claims for defective merchandise was entered into. The agreement contained a provision for arbitration. The agreement recited that it was being made by petitioner individually as well as his corporation, and he signed it twice, once on behalf of the corporation. Petitioner now claims that he had no personal liability for the arrears in his corporation account and that he never intended to become bound; and he wishes to have that issue tried. Regardless of whether the agreement created any personal liability on petitioner's part, it is indisputable that he made an agreement to arbitrate. That defeats his application.

VALENTE, J. (dissenting). On this appeal from an order denying petitioners' application for a stay of arbitration, pursuant to article 75 of the CPLR, petitioners sought a trial of the issues as to whether a valid agreement was made between each of the petitioners and the respondent, whether such agreement was valid and enforcible and whether respondent, a foreign corporation, could proceed with the arbitration without first complying with the requirements of article 13 of the Business Corporation Law.

I agree with the majority of the court that the only claim that merits consideration is whether petitioner individually — as distinguished from the corporate entity — agreed to arbitrate. However, I dissent from the holding of the majority that it is indisputable that the petitioner individually made an agreement to arbitrate, and thereby subjected himself as well as the corporation to liability for any award that might be made in arbitration. In my opinion, the record presents a triable issue as to whether the individual petitioner is bound by the arbitration agreement, on which respondent relies, and that issue must be remanded for trial by the court before that petitioner individually can be compelled to arbitrate.

The corporate petitioner, Sidney B. Elliott Sales, Inc. (hereinafter the " Sales Corporation ") is a domestic corporation engaged in the business of importation and distribution of commercial chairs and wood products. Respondent is a State-owned Polish enterprise whose business consists in the export throughout the world of various wood products manufactured in Poland. The Sales Corporation became one of respondent's customers in 1960 and purchased goods from respondent by the issuance of bills of exchange against documents. By the early months of 1963, a substantial amount of these bills of exchange, in a sum amounting to over $200,000, accepted by the Sales Corporation, had not been paid. In March, 1963, a conference was held among the parties, in New York, which resulted in an agreement whereby the Sales Corporation would reduce the indebtedness by payments of $25,000 per month. That agreement was con-

firmed in a letter dated March 22, 1963 written on the stationery of the Sales Corporation. The letter also indicated that "the matter will be finalized" when its representative, the individual petitioner (hereinafter "Elliott"), visited Poland in July, 1963.

Elliott's visit to Poland in the Summer of 1963 resulted in the execution of the agreement of August 2, 1963, which is the subject of this proceeding. The agreement was prepared by respondent in Poland and was signed by Elliott there. There is no question but that the name "Mr. Eliott" appears many times in the contract. The memorandum decision by the majority of this court states: "The agreement recited that it was being made by petitioner individually as well as his corporation, and he signed it twice, once on behalf of the corporation". The record does not support that conclusion.

Primarily, it should be noted that the original contract was not submitted to the court for examination. The printed copy of the agreement appears in the record. It is apparent from the printed signatures in the record that Elliott signed once, as did the other signatories, and that his signature is in a representative capacity for "Elliott B. Sales Co." (obviously meant to be the Sales Corporation).

Moreover, I disagree with the interpretation of the majority that the agreement recited that it was being made by petitioner in his individual capacity as well as for his corporation. The recital reads that the agreement was being concluded by respondent and "Mr. Elliott, the proprietor of Elliott B. Sales Co." This prefatory clause is certainly not an unequivocal statement that Elliott should be bound personally by the agreement. On the contrary, on its face it purports to be a contract in a representative capacity only.

Considering the antecedent business transactions between the parties, the duty to make the payments and to perform the other conditions of this agreement, would by fair implication fall on the corporation. There is no language of guarantee in the agreement to indicate that Elliott was adding his personal liability to that of the corporation to obtain a forebearance. The whole setting of the occasion points to Elliott's acting solely in a representative capacity. ·

In *Ell Dee Clothing Co.* v. *Marsh* (247 N. Y. 392, 397) the court said: "The general rule may be stated that where one party to a written contract is known to the other to be in fact acting as agent for some known principal, he does not become personally liable whether he signs individually or as agent."

So, too in *Mencher* v. *Weiss* (306 N. Y. 1, 4) the court stated: "We commence with the rule that where there is a disclosed principal-agent relationship and the contract relates to the matter of the agency, the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of the principal. (*Keskal* v. *Modrakowski,* 249 N. Y. 406; *Ell Dee Clothing Co.* v. *Marsh,* 247 N. Y. 392; *Hall* v. *Lauderdale,* 46 N. Y. 70, 74.) "

In *Salzman Sign Co.* v. *Beck* (10 N Y 2d 63) it was held that even though the body of the contract contained a provision that where the purchaser was a corporation, the officer of the corporation signing on behalf of the corporation personally guaranteed the payments, that was not sufficient to charge the signing officer as a guarantor when his signature was not an individual one, but as president. The language of Chief Judge DESMOND (p. 67) is pertinent here: "In modern times most commercial business is done between corporations, everyone in business knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice — once as an officer and again as an individual."

In a similar case, approving *Salzman* (*supra*), the Court of Appeals held in *Savoy Record Co.* v. *Cardinal Export Corp.* (15 N Y 2d 1, 6–7), per FULD, J.: "The obligation of a guarantor is, admittedly, a heavy one, and the courts should refrain from foisting such an obligation upon a party, be he individual or corporation, who simply signs as agent, absent the requisite clear and unequivocal evidence, to be gathered from the writing itself, that he intended to assume such a liability." (See, also, *Warren-Connolly Co.* v. *Saphin,* 283 App. Div. 391.)

We must commence with the fundamental proposition that no one may be compelled to resort to arbitration unless by clear language he has so agreed. (*Matter of Littlejohn & Co.* [*Fah Sang Co.*], 20 A D 2d 697, affd. 15 N Y 2d 530; *Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130.) The question as to whether there has been an agreement to arbitrate, when raised, is one for the court to determine and not for the arbitrators. (*Matter of Lafayette Iron Works* [*Wilaka Constr. Co.*], 23 A D 2d 487; *Matter of Uddo* [*Taormina*], 21 A D 2d 402; *Matter of Philip Export Corp.* [*Leathertone, Inc.*], 275 App. Div. 102; *Matter of Wesley Simpson, Inc.* [*Joyce Fashions*], 274 App. Div. 426.)

Special Term, in the instant case, erroneously held that whether or not both the corporation and the individual were bound by the arbitration clause was a matter for decision by the arbitrators. As indicated above that was properly a threshhold question for the court. In affirming, the majority of this court tacitly approves the ruling at Special Term. Yet, the majority rules that "Regardless of whether the agreement created any personal liability on petitioner's part, it is indisputable that he [Elliott] made an agreement to arbitrate".

In my opinion, the question is far from indisputable. The writing itself is equivocal. In addition, when the setting in which the contract was made is considered, when it must be recognized that the agreement arose from a strictly corporate obligation, and when the contract was admittedly drawn in a foreign country by persons not wholly familiar with our laws, there are raised serious triable issues as to whether Elliott agreed in his individual capacity to arbitrate.

Since I would hold that a triable issue is raised as to whether Elliott made an agreement in his individual capacity to arbitrate, it is unnecessary to reach the implications of the majority opinion that the arbitration clause may be considered as separate and apart from the entire agreement. If the parties, in fact, intended to superadd Elliott's personal liability to that of the Sales Corporation, then the contract might be one to answer for the debt of another, which under the Statute of Frauds would have to be subscribed by the party to be charged in order to be valid. (General Obligations Law, § 5–701, subd. 2.) Hence, under those circumstances, if Elliott did not subscribe the agreement in his individual capacity, the entire agreement would be unenforcible against him (see *Savoy Record Co.* v. *Cardinal Export Corp., supra; Salzman Sign Co.* v. *Beck, supra*) and the arbitration clause would fall with the remainder of the agreement. (See *Matter of Exercycle Corp.* [*Maratta*], 9 N Y 2d 329, 340.)

I would therefore modify the order appealed from to the extent of granting the motion of the individual appellant to stay the arbitration against him pending a trial by the court, pursuant to CPLR 7503 (subd. [a]), of the issue of whether a valid agreement to arbitrate was made by individual petitioner; and otherwise I concur in the affirmance of the remainder of the order.

McNally, Eager and Steuer, JJ., concur in Memorandum by the court; Valente, J. P., dissents in opinion.

Order affirmed, etc.