Joseph Liff, J.
Defendant’s motion pursuant to CPLR 3211 (subd. [a], pars. 5 and 7) to dismiss the complaint because (1) the cause of action is barred by the Statute of Frauds and (2) the complaint fails to state a cause of action, is denied.
The pleading sets forth that on or about July 1, 1968, in consideration of services rendered by plaintiff and other good and valuable consideration, defendant gave plaintiff an option to purchase, for investment purposes only, 1,500 shares of the common stock of Wolins Pharmacal Corp. at a price of $1.10 per share, said option to be exercised within a period of five years; that the defendant was and is the president, a director and the holder of the majority of the stock of said corporation and that the plaintiff was an employee thereof; that defendant, after July 1, 1968, signed a writing indicating that such an option had been granted to the plaintiff; and that when plaintiff attempted to exercise the option and to acquire and pay for the shares of stock the defendant refused to perform the agreement.
The defendant urges that the agreement alleged was one for the sale of securities required to be in writing pursuant to section 8-319 of the Uniform Commercial Code (cf. Cohn, Ivers & Co. v. Gross, 56 Misc 2d 491; Burnside & Co. v. Havener Securities, 25 A D 2d 373).
The plaintiff has countered by asserting that the agreement need not have been in writing for it was an option and was no different from the “ call ” that was considered in Cohn, Ivers & Co. v. Gross (supra). Further, plaintiff argues that if there had to be a writing, the signature by the defendant on a statement for the registration of the securities in which defendant acknowledged the agreement alleged by the plaintiff, is an admission and sufficient to meet the requirements of section 8-319, for “ some writing ’ ’ signed by the defendant who is to be charged therewith ‘1 sufficient to indicate ’ ’ that a contract had been made.
The defendant responds that his signature to the registration statement was affixed as chief executive officer and a director of the corporation and not as an individual. In support of this position defendant cites the decision of the Court of Appeals in Salzman Sign Co. v. Beck (10 N Y 2d 63). In that case plaintiff sought to hold the defendant liable under an agreement which *752 he had signed on behalf of the corporation and which contained a statement that any officer signing it was personally guaranteeing it. The Court of Appeals affirmed this Department (11 A D 2d 1068) in holding that the defendant could not be held liable unless the intent to bind himself personally clearly appeared. The Court of Appeals in affirming stated (p. 66): ‘ ‘ A plausible argument may be made that a corporate officer who signs his name to such a contract is presumed to have read and understood it and so should be considered bound by its plain language ” and cited Mencher v. Weiss (306 N. Y. 1), where corporate officers had been held individually liable where additional evidence was available to have it appear that it was the explicit intent of the signature to create individual liability. Thus Salzman was a case involving subdivision (2) of section 5-701 of the General Obligations Law and the question arises as to whether a distinction can be drawn between the nature of the subscribed writing necessary to support a promise to answer for the debt of another and “ some writing ” signed by the party to be charg’ed therewith which would suffice 1 ‘ to indicate ’ ’ the agreement for the sale of securities (Uniform Commercial Code, § 8-319).
However, while we have considered these questions we expressly refrain from making any determination thereon for the reason that we have reached the conclusion that the motion should be denied because of subdivision (d) of section 8-319.
In recodifying the Statute of Frauds the Legislature on the recommendations of the Law Revision Commission and the Commission on Uniform State Laws respectively, treated portions differently. Thus, agreements not to be performed within one year, guarantees, etc., and conveyances and contracts concerning real property, etc., are found in the General Obligations Law (§§ 5-701, 5-703). These statutes provide that any such agreement is void unless it or some note or memorandum thereof is in writing, subscribed by the party to be charged therewith. On the other hand, agreements for the sale of goods or for the sale of securities were placed in sections 2-201 and 8-319 of the Uniform Commercial Code. These sections declare that such agreements are not enforceable unless there is some writing sufficient to indicate that the agreement had been made, signed by the party against whom enforcement is sought. The choice of language in each instance must be regarded as significant. In each instance, in the Uniform Commercial Code, there are parallel provisions to the effect that the contract may be enforced though there is no writing if certain other conditions *753 are met; as for instance, where a confirmation was forwarded and the recipient failed to send written objection within 10 days after receipt (§ 2-201, subd. [2]; § 8-319, subd. [c]) and again in each section the contract could still be enforced if the party against whom enforcement is sought were to admit in his pleading, testimony or otherwise in court that the agreement had been made (§ 2-201, subd. [3], par. [b]; § 8-319, subd. [d]). It is not straining to assume that the distinction was made between void contracts in the one case and “ unenforceable ” contracts in the other because the first dealt with contracts which should be prepared with greater formality while the latter treated of agreements made daily in the market place.
The report of the Law Revision Commission [1955 Report of N. Y. Law Rev. Comm., vol. 3, p. 1979] noted that subdivision (d) of section 8-319 effected a change in the law. This provision and section 2-201 (subd. [3], par. [b]) were not in section 85 of the Personal Property Law which in some respects is regarded as the predecessor to both sections although it contained no express reference to the sale of securities. In the circumstances revealed by the papers here considered, the defendant should be denied the opportunity to move to dismiss the complaint before his answer is served. It follows therefore that the motion of the defendant is premature. Whether or not the defendant can be compelled to submit to an examination before trial and to deny or admit the making of the agreement which plaintiff pleads need not be determined at this time (cf. 1955 Report of N. Y. Law Rev. Comm., vol. 1, Comments on § 2-201, subds. [c] and [b], p. 372 and Comments on § 8-319, subd. [d], vol. 3, p. 1979).
It may be noted here that (the affidavit of one of his attorneys to the contrary notwithstanding) nowhere in his affidavits has the defendant denied the agreement as alleged by the plaintiff although he does allege that he offered the plaintiff an option agreement in different terms which plaintiff refused to accept.
Should our construction of the statutes be correct an analogy may be drawn to those cases which have enunciated the principle recently restated in Louis Light Corp. v. Monte (32 A D 2d 895) that summary judgment, which is the procedural equivalent of a trial, will not be granted where an issue is found to exist or where summary judgment will be denied because the facts are wholly within the knowledge of the moving party and might be disclosed by cross-examination or examination before trial (Terranova v. Emil, 20 N Y 2d 493, 497). Further support for the foregoing conclusions may be found in CPLR 3211 (subd. *754 [d]) and 3212 (subd. [f]) which would permit the denial of the relief under either section where the facts essential to opposition are not as yet available.
Thus it cannot be determined whether or not an issue exists until the defendant has at least pleaded to the complaint.
A short form order denying the motion has been signed.