**LCA LEASING CORP., Plaintiff,**

v.

**BORVIG CORP. and Gary Schulz, Defendant.**

**No. 91 Civ. 5545 (JES).**

United States District Court,
S.D. New York.

July 26, 1993.

Corwin & Solomon, P.C. (Donna Gerber, of counsel), New York City, for plaintiff.

Robert W. Fink, Goshen, NY, for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

This is a diversity action for breach of an agreement to lease two buses. For the reasons that follow, plaintiff's motion for summary judgment against defendants Borvig Corp. and Gary Schulz is granted.

## BACKGROUND

Plaintiff LCA Leasing Corp., and its predecessor LSA Leasing Corp. ("LCA" or "LSA")[1], is in the business of, among other things, leasing equipment. Aff. of James J. Ragan dated September 1992 ("Ragan Sept. Aff.") ¶ 5. Defendant Gary Schulz ("Schulz") is President of defendant Borvig Corp. ("Borvig") and non-party Berthoud Pass Ski Corp. ("Berthoud"). Aff. of Gary Schulz dated January 19, 1993 ("Schulz Aff.") ¶ 1. On or about November 31, 1989, LSA agreed to lease two Champion Challenger Model 3241 passenger buses (the "buses") to Borvig and Berthoud (the 1989 lease). Schulz Aff. ¶ 2. On or about April 1, 1990, Borvig and Berthoud defaulted on the 1989 lease. Ragan Sept. Aff. ¶ 10. LSA repossessed the buses on or about June of 1990. Schulz Aff. ¶ 2.

By letter dated November 16, 1990, LSA offered Berthoud, Borvig and Schulz, *inter alia*, a new lease on the buses. Ragan Dec. Aff. ¶ 12. The letter detailed a monthly payment schedule for a term of sixty-five (65) months:

"Option 2, we will offer you a new lease on these buses structured as follows. The lease would start, 1 December, 1990 and run for 65 months and would entail an initial 1 December, payment of $2,800 followed by 6 monthly payments at $2,800, then 5 payments at $200. In the second through the fifth years, there are in each year seven payments of $3,705.17 followed by five payments of $200. Payments 61 to 65 are $3,705.17 .each."

Ragan Dec. Aff. Ex. 1.

Borvig, Berthoud and Schulz accepted LCA's offer by typing onto the bottom of the second page of LCA's letter:

"Option number 2 is hereby agreed to and accepted this 23rd day of November, 1990.

| | | |
|---|---|---|
| Berthoud Pass Ski Corp. | By: Gary Schulz | Title: President |
| Borvig Corporation | By: Gary Schulz | Title: Chairman/CEO |
| Gary Schulz | Gary Schulz" | |

*Id.*

On or about the same date, November 23, 1990, Borvig and Berthoud signed LCA's standard lease form which contained addi-

---

[1]. LCA was known as LSA Leasing Corp. until January 1, 1991, on or about which date LSA Leasing Corp. changed its name to LCA Leasing Corp. Ragan Dec. Aff. ¶ 5.

tional terms (the "1990 Lease"). Ragan Dec. Aff. ¶ 13. On or about November 30, 1993, Schulz signed LCA's standard guaranty form in which Schulz promised to pay all sums due under the 1990 Lease upon the default of Borvig or Berthoud. *Id.* In or about December, 1990, the lessees made a payment of $2,800.00 Schulz Aff. Ex. B. Neither Borvig, Berthoud nor Schulz made any other payment on the lease. Ragan Dec. Aff. ¶ 14.

On or about July 17, 1991, the United States Bankruptcy Court for the District of Colorado granted Berthoud an order authorizing it to reject the unexpired portion of the 1990 lease and to continue in operation as a debtor-in-possession under Chapter 11 of the United States Bankruptcy Code. *Id.* ¶ 3, 15. LCA commenced this action against Borvig and Schulz by filing a complaint on August 16, 1991. On December 4, 1992, LCA filed an amended complaint. LCA now moves for summary judgment against both Borvig and Schulz.

## DISCUSSION

Summary judgment may be granted only where "there is no genuine issue as to any material fact" and a party is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, this Court is not to weigh evidence and make credibility findings, but rather to determine whether or not there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rules of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250, 106 S.Ct. at 2511. In this case, summary judgment against both Borvig and

Schulz is appropriate because there is no issue as to any material fact and, after drawing all reasonable inferences in Borvig's and Schulz's favor, no reasonable trier of fact could find in favor of either defendant.

### I. *Summary Judgment Against Defendant Borvig Corp.*

■ LCA has established a *prima facie* case against Borvig by showing that Borvig entered into the 1990 Lease with the signature of its President, Gary Schulz, *Pimpinello v. Swift & Co.,* 253 N.Y. 159, 162–63, 170 N.E. 530 (1930), and that Borvig breached the lease by failing to make any monthly rent payments after December 1990, Plaintiff's Rule 3(g) Statement dated December 18, 1992, ¶ 8. In its answer to the amended complaint, Borvig admitted signing LCA's standard form lease agreement, *see* Answer to the First Amended Complaint, and failed to raise any defense to LCA's claim against Borvig based on the alleged breach of the 1990 lease. *See id.* Moreover, Borvig does not dispute that "[t]he lessees made a payment of $2,800.00 in December, 1990 and no payments thereafter." Defendants' Local Civil Rule 3(g) Statement dated August 24, 1992. It follows that LCA is entitled to summary judgment against Borvig as a matter of law.

### II. *Summary Judgment Against Defendant Gary Schulz*

LCA argues that defendant Schulz is personally liable for overdue lease payments both under LCA's November 16, 1990 letter endorsed by Schulz on November 23, 1990, and, as a guarantor of Borvig and Berthoud, under the guaranty form executed by Schulz on November 30, 1990.

There can be no question that, under New York law,[2] the November 16, 1990 letter con-

---

**2.** Under New York's "grouping of contacts" test, which renders applicable the "law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation," *Hormel Int'l Corp. v. Arthur Andersen & Co.,* 55 A.D.2d 905, 390 N.Y.S.2d 457, 458 (1977) (*quoting Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963)), a New York court would apply

its own substantive law. New York is the forum state of this action, and the defendants do not dispute LCA's allegation in the Amended Complaint that both Borvig and Schulz are domiciled in New York. *See* Amended Complaint ¶¶ 4, 5. Moreover, although LCA's standard lease and guaranty forms provide for the application of Kentucky law, Ragan Dec. Aff. Ex 2 at 2, LCA's letter dated November 16, 1990, setting forth the offer which Schulz accepted in his personal ca-

taining both LCA's offer of a new lease and Schulz's acceptance thereof established a legally binding agreement, as a matter of law. *See, e.g., Pharmaceutical Horizons v. Sterling Drug,* 127 A.D.2d 514, 512 N.Y.S.2d 30, *mot. for lv. dismd.,* 69 N.Y.2d 984, 516 N.Y.S.2d 1027, 509 N.E.2d 362 (1987); *Levin v. Hoffman Fuel Co.,* 94 A.D.2d 640, 462 N.Y.S.2d 195, *aff'd,* 60 N.Y.2d 665, 468 N.Y.S.2d 104, 455 N.E.2d 663 (1983). The November 16, 1990 letter unambiguously offered to lease the buses to Berthoud, Borvig and Schulz. Berthoud, Borvig and Schulz explicitly accepted LCA's offer by typing onto the letter words of acceptance, followed by one signature for each offeree. Moreover, the offer and acceptance were supported by consideration, *see Liberty Nat'l Bank & Trust Co. v. General Motors Acceptance Corp.,* 85 A.D.2d 889, 446 N.Y.S.2d 758 (1981), and there is no language in the letter that conditions either the offer or the acceptance.

Nor can there be any question that the intention of the parties was that Schulz himself was to be bound personally and individually. The prefatory address of the November 16, 1990, letter indicates that the offer was specifically directed to each of Berthoud, Borvig and Schulz at their separate addresses, *see Mencher v. Weiss,* 306 N.Y. 1, 6, 114 N.E.2d 177 (1953), and Schulz unequivocally accepted that offer in his personal capacity. *See* Ragan Dec. Aff. Ex. 1. Furthermore, no words in the body of the contract indicate an intention of the parties that Schulz should not be bound in his personal capacity. *See id.* at 5, 114 N.E.2d 177.

▆▆ There is no merit to Schulz's claim that he did not subjectively intend to be personally bound by the LCA lease. Schulz Aff. ¶ 7. A party's actual or secret intent is immaterial to the formation of a contract. *Mencher,* 306 N.Y. at 7, 114 N.E.2d 177; *Ahern v. South Buffalo Ry.,* 303 N.Y. 545, 560, 104 N.E.2d 898 (1952), *aff'd,* 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395 (1953); *Porter v. Commercial Casualty Ins. Co.,* 292 N.Y. 176, 183, 54 N.E.2d 353 (1944), *reh'g denied,* 292 N.Y. 717, 56 N.E.2d 122 (1944). As Judge Learned Hand wrote in *Hotchkiss v.*

*National City Bank of New York,* 200 F. 287 (S.D.N.Y.1911), *aff'd,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913):

"A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort."

*Id.* at 293. Therefore, since Schulz conducted himself with "words and deeds which constitute objective signs" manifesting his intent to be personally bound by the lease, *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 74 (2d Cir.1984), he is personally liable to LEA on the lease as a matter of law. *See Shearson Lehman CMO, Inc. v. TCF Banking & Sav.,* 710 F.Supp. 67 (S.D.N.Y.1989).

▆▆ Alternatively, Schulz argues that his personal liability under the letter dated November 16, 1990, was superseded in all respects by the standard form lease agreement executed by Borvig and Berthoud on November 23, 1990. This claim is likewise without merit. Under New York law, the elements of a novation, each of which must be present in order to demonstrate novation, *i.e.,* the superseding of a previously existing contractual obligation and its replacement of a new one, are a previously valid obligation, agreement of all parties to the new contract, extinguishment of the old contract, and a valid new contract. *Callanan Indus., Inc. v. Micheli Contracting Corp.,* 124 A.D.2d 960, 508 N.Y.S.2d 711 (1986); *see also Wasserstrom v. Interstate Litho Corp.,* 114 A.D.2d 952, 495 N.Y.S.2d 217 (1985); *Town & Country Linoleum & Carpet Co. v. Welch,* 56 A.D.2d 708, 392 N.Y.S.2d 517 (1977). None of these elements are present here. The standard form lease agreement dated November 23, 1990, nowhere provides for the

pacity, does not include any forum selection clause.

extinguishment of the obligations created by the agreement referred to above resulting from LCA's November 16, 1990 letter. Moreover, that agreement contains no provision releasing Schulz from his personal liability under LCA's letter agreement. Indeed, even the personal guarantee dated November 30, 1990, failed to explicitly extinguish his obligation under the November 16, 1990, letter agreement. Therefore, no rational trier of fact could find a novation on these facts.[3]

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment shall be and hereby is granted. The Clerk of the Court is directed to enter judgment for the plaintiff and to close the above-captioned action.

It is **SO ORDERED.**

---

**3.** In view of the Court's summary judgment for the plaintiff on the grounds set forth in this memorandum opinion and order, the Court need not address the issue of Schulz's liability as a guarantor against Borvig or Berthoud's default.