OPINION OF THE COURT
Catherine M. DiDomenico, J.
Plaintiff Formica Construction Co., Inc. commenced this action to recover $12,000 owed on a promissory note signed by defendant Daniel Mills together with interest, costs and attorneys’ fees as provided therein. The note was for extras installed or performed by Formica, who served as the general contractor in the renovation/construction of Ruddy & Dean, a restaurant owned by Mossi Inn, Inc. Mossi is a closely held corporation whose sole officers and shareholders are defendant’s parents. Defendant Daniel Mills is an employee of Mossi and manages the restaurant. Defendant Daniel Mills answered this action alleging that the note is not enforceable against him individually, and asserting a counterclaim seeking $250,000 based upon, among other things, negligent construction.
This case was tried before this court on January 27, March 10, March 30, March 31, and April 12, 2005. Both parties were represented by counsel and placed documents in evidence. Plaintiff called Kenneth Formica and Robert Caneca (the licensed architect retained by defendant) as expert witnesses. Defendant called Patrick Fitzpatrick, a construction manager, as an expert witness in support of his claims.
The court makes the following findings of fact and conclusions of law based on the testimony and evidence adduced at trial.
In February 2000, Formica agreed to renovate a structure located at 44 Richmond Terrace (the premises) owned by Mossi at an agreed price of $650,000. No written agreement was ever executed; however, a payment schedule was prepared (plaintiff s exhibit 3). The work was completed in or around June 2000. A final certificate of occupancy (C of O) was issued for the premises on June 25, 2004 (defendant’s exhibit R). The restaurant located on the premises has been open consistently for business since issuance of the C of O.
On September 5, 2000, a closing occurred for the purpose of converting the construction loan on the business into a mortgage loan. The closing was held at the offices of defendant’s attorney, Mr. James Columbo. Formica was represented at the closing by its president, Kenneth Formica, Sr., and his son, Kenneth Formica. At the closing, Formica was paid the remainder *400 of the $650,000 owed on the original “contract.” However, the loan proceeds proved insufficient to cover the $37,000 Formica claimed was owing for the extras. These items were specified in a written itemized punch list entitled “44 Richmond Terrace Extras” (plaintiffs exhibit 2).
After a discussion between Daniel Mills, his parents, their lawyer, and the Formicas, it was decided that the $37,000 owed to Formica for the extras would be provided for in a promissory note (plaintiffs exhibit 1). Kenneth Formica called Formica’s lawyer, William O’Neill, who came to the closing and drafted the note and presented it to Daniel Mills for signature. After reviewing the note and the punch list, Daniel Mills signed both documents “Daniel Mills” in the presence of his lawyer, his parents, Formica’s representatives and Mr. O’Neill. Above Mills’ signature on the punch list is written “[t]o be paid as per note.” Mr. O’Neill witnessed and notarized Mills’ signature on the note. The note, dated September 5, 2000, provides, in pertinent part, as follows:
“FOR VALUE RECEIVED,
“(The ‘Maker’) Daniel Mills residing at 24 Bosworth Street, Staten Island New York 10310, hereby acknowledges himself indebted to and promises to pay to the order of FORMICA CONSTRUCTION CORE, (the ‘Payee’) at 11 Ferry Street, Staten Island, NY 10302 . . . the principal sum of thirty seven thousand (37000—), (the ‘Principal Sum’), to be paid as follows:
“PAYMENT IN FULL TOGETHER WITH ACCRUED INTEREST AT THE RATE OF 8% PER ANNUM UPON DEMAND, after January 1, 2001; $25,000 due January 1, 2001; Bal Due June 15, 2001 “This Note shall be binding upon the Maker and its successors and assigns and the terms hereof shall inure to the benefit of the Payee and his successors and assigns, including subsequent holders hereof.
“IN WITNESS WHEREOF, the Maker has duly executed this Note the date and year first above written.” (Plaintiffs exhibit 1.)
It is undisputed Daniel Mills paid a total of $25,000 toward the $37,000 principal owed on the note. He made a cash payment of $10,000 to Formica on January 4, 2001, and on February 23, 2001, Mills directed his lawyer to issue an escrow check to Formica in the amount of $15,000, leaving the total outstand *401 ing principal of $12,000. Mills did not offer any evidence to suggest whether these payments were made from Mossi’s account or his personal account.
The note is a negotiable instrument governed by article 3 of the Uniform Commercial Code. The note is signed by the maker (Daniel Mills), contains an unconditional promise to pay a sum certain on demand or at a definite time, and is payable to order. (UCC 3-104 [1].) Formica established a prima facie case by producing the promissory note executed by Daniel Mills and demonstrating that Mills failed to pay it. (Gross v Fruchter, 230 AD2d 710 [2d Dept 1996].) Having made this showing, the burden now shifts to Mills to establish a defense to the note.
Defendant argues the note is not enforceable against him individually. UCC 3-403 (2) sets forth the general rule that one who signs a negotiable instrument without indicating that his signature is made in a representative capacity will be personally obligated on the instrument. This section provides as follows:
“(2) An authorized representative who signs his own name to an instrument
“(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
“(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.” (UCC 3-403 [2] [a], [b].)
The evidence at trial establishes that, while not an officer or shareholder of Mossi, Daniel Mills served as its authorized agent with apparent authority for the purpose of this construction project. Mills does not dispute this fact. (See defendant’s brief at 5 n 4 [“Clearly, since it was the Defendant Mills who dealt with the Plaintiff, Defendant Mills could be deemed an agent for the Corporation”].) Mills repeatedly held himself out as authorized to negotiate and contract with respect to this work. When his architect, Mr. Caneca, was asked who was his client for this particular project, he replied “Danny Mills.” Mr. Caneca further testified that he was retained by Danny Mills “to draw plans, [and] obtain Building Department approvals for renovation.” *402 This position was supported by Kenneth Formica who testified that Daniel Mills solicited Formica to do the work, negotiated the price, discussed changes in the field, met with him and Mr. Caneca, and supervised Formica’s work on a daily basis. These facts were largely undisputed by Mills.
The note is clear and unambiguous on its face. It neither names Mossi Inn, Inc. nor indicates anywhere that Daniel Mills was signing in a representative fashion. Accordingly, Mills, as an authorized representative of Mossi, is personally liable on the note. (UCC 3-403 [2] [a]; Schmitz v MacDonald, 250 AD2d 533 [1st Dept 1998]; Tropical Ornamentals v Visconti, 115 AD2d 537 [2d Dept 1985].)
Mills places great emphasis on the fact that Formica allegedly knew the premises were owned by Mossi at the time the note was signed, and, therefore, that Formica knew Mills was signing on behalf of Mossi. While it was clear that Kenneth Formica knew a corporate entity at one time had something to do with the premises or with the restaurant operated thereon, Mills did not prove that Formica knew the premises were actually held in the name of Mossi Inn, Inc.[1]
As the note neither names Mossi as the party represented, nor indicates that Mills was signing in a representative capacity, resort to paroi evidence is not permitted. (UCC 3-403 [2] [b].)[2]
Mills’ claim that he was under “duress” when he signed the note because he was allegedly told that if he did not sign the note the closing would not go forward fails on several grounds. First, Mills testified that the party who allegedly informed him the closing would be aborted if he did not sign the note was his own lawyer, Mr. Columbo. (Compare Friends Lbr. v Cornell Dev. Corp., 243 AD2d 886, 888 [3d Dept 1997] [economic duress is *403 demonstrated by proof that “one party to a contract has threatened to breach the contract by withholding performance unless the other party agrees to some further demand”].) Secondly, at no time prior to the commencement of this lawsuit did Mills seek to disavow himself of responsibility for the note due to duress or otherwise. Rather, it is undisputed that Mills made two payments on the note, each several months after the note was executed by him, totaling $25,000. Having made these payments without objection or protest, Mills ratified the note and waived any right he may have had to repudiate his obligations thereunder. (Edison Stone Corp. v 42nd St. Dev. Corp., 145 AD2d 249 [1st Dept 1989]; see also Bethlehem Steel Corp. v So-low, 63 AD2d 611 [1st Dept 1978].) In addition, Kenneth Formica credibly testified that Mills assured him that the $12,000 balance due on the note would be paid as promised.
Mills’ argument that the note is unenforceable against him for lack of consideration as the premises are owned by Mossi and the consideration of the extras did not flow to him also falls short for several reasons. It is well established that a benefit conferred on a third party is sufficient consideration to bind the promisor. (Mencher v Weiss, 306 NY 1, 8 [1953] [“a benefit flowing to a third person or legal entity constitutes a sufficient consideration”]; see also 22 NY Jur 2d, Contracts § 65, at 93 [to constitute adequate consideration for a promise, benefit need not flow to promisor, but may move to a third person].) Applying this basic contract principle, New York courts have found sufficient consideration to support individual liability on a promise made by an employee or shareholder of a corporation where the benefit of the promise flowed to the corporation. (See Mencher v Weiss, 306 NY at 8-9, supra [fact that employees’ promises under collective labor agreement ran to corporation was sufficient to support corporation president’s promise to be personally liable under contract]; Holt v Feigenbaum, 52 NY2d 291, 299 [1981] [sufficient consideration for promise existed notwithstanding that individual shareholder may have “realized no concrete benefit as result of the bargain”]; Bulger v Colonial House of Flushing, 281 App Div 847 [2d Dept 1953] [note given by corporation as part of purchase price for sale to two individuals of all outstanding stock was supported by sufficient consideration since sellers gave up their share of stock].)
Mills further argues that the extras constituted work performed prior to the execution of the note and, therefore, is not valid consideration. UCC 3-408 expressly states that “no *404 consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind.” Since it is clear the note was given by Mills for work already performed by Formica on the premises, the note was given as payment for an antecedent debt and, therefore, no consideration is required. (Friends Lbr. v Cornell Dev. Corp., 243 AD2d 886 [3d Dept 1997]; see also 80 NY Jur 2d, Negotiable Instruments and Other Commercial Paper § 169, at 193 [where instrument is given in payment for past obligation of any kind, consideration is unnecessary].)
Finally, even if the extras were not valid consideration, this would not change the result here. Mills’ entire argument is premised on the assumption that the sole consideration for the note was the extras performed by Formica. However, the law is clear that consideration may consist of a benefit to the promisor or a detriment of the promisee. (Holt v Feigenbaum, 52 NY2d at 299 [“we have expressly held that a promisee who has incurred a specific, bargained for legal detriment may enforce a promise against the promisor . . .”]; see also Melville v Kruse, 174 NY 306 [1903] [surrender of a right is good consideration].) Here, the evidence establishes that, by accepting the note signed by Mills, Formica waived its right to insist on immediate payment of the $37,000 owed for the extras. The forbearance of this right constitutes sufficient consideration for the note, regardless of any benefit (or lack thereof) flowing to the other party.
Mills’ final argument is that the note violates General Obligations Law § 5-1105 because it allegedly fails to specifically recite what consideration was given for it. General Obligations Law § 5-1105 provides as follows:
“A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed.”
First, as previously noted, the note here is a negotiable instrument governed by article 3, and not simply a promise to pay to be construed according to General Obligations Law § 5-1105. (McCarthy v Sessions, 170 AD2d 25, 27 [3d Dept 1991].) However, even if General Obligations Law § 5-1105 was the only applicable statute, it would not bar enforcement of the *405 note. On its face, the note states that “FOR VALUE RECEIVED” Mills acknowledged himself indebted to Formica in the stated amount. This language, coupled with the fact that the note was given for work already performed by Formica, is sufficient to satisfy the statute. (American Bank & Trust Co. v Lichtenstein, 48 AD2d 790, 791 [1st Dept 1975], affd 39 NY2d 857 [1976] [“any financial accommodations given” is sufficient expression of past consideration under General Obligations Law § 5-1105]; Sarama v John Mee, Inc., 102 Misc 2d 132, 134 [Civ Ct, NY County 1979] [General Obligations Law § 5-1105 does not require the use of the talismanic words “in consideration of,” rather, consideration is to be determined by considering the “entirety” of the writing].)
Accordingly, having failed to establish any defense to his liability on the note, the court finds that plaintiff may enforce the note against Mills individually.
The counterclaim interposed by defendant Mills alleging the construction was not done according to “plan,” or was otherwise done negligently, is dismissed. Under New York law, corporations are deemed to have a separate existence. For this reason an individual shareholder or employee has no right to bring an action in his own name for the purpose of asserting a wrong allegedly sustained by the corporation. (Abrams v Donati, 66 NY2d 951 [1985].) As the premises are owned by Mossi, Mills lacks standing to assert this counterclaim. Mills does not take issue with this conclusion. (See defendant’s brief at 9 [“there is no need to proceed on Defendant’s counterclaim, since Daniel Mills is not the proper party to bring it, the Corporation is”].)
The court notes, however, that even if Mills had standing to assert Mossi’s counterclaim, it would still have to be dismissed for failure of proof. The counterclaim alleges that various aspects of the premises were not constructed according to “plan” (defendant’s exhibit B) and that other work was performed negligently.
With respect to the former claim, defendant alleges that Formica agreed to “do the building for $650,000” and that Mills did not receive all he was supposed to receive because there were items reflected in the “plan” that were not in the completed structure. However, defendant completely failed to establish which set of plans formed the underlying basis for their agreement. The parties failed to enter into a written contract detailing what Formica was to build for the $650,000 agreed upon price. Formica testified this price was based on his *406 review of preliminary drawings; while Mills testified the price was based on defendant’s exhibit B, a more detailed set of plans. Mr. Caneca, defendant’s architect, did not know what drawings Formica considered in setting the price and could not recall how many sets of plans or amendments there were for this job. Most importantly, like the parties, Mr. Caneca could not tell this court whether defendant’s exhibit B (the plans exclusively relied on by Mills in his counterclaim) were, in fact, the plans for the job or another set of interim plans. As Mills utterly failed to prove what set of plans Formica was allegedly obligated to use to guide this construction, the claims for failure to build according to “plan” are dismissed as not proven at trial.
In addition, the overwhelming evidence suggests that, like many construction jobs, this project evolved over time. This court finds to the extent design changes were made “in the field,” these changes were agreed to and accepted by Mills and Mossi. Mills’ claim, for example, that he did not agree to such obvious and major structural changes (such as what the front of the restaurant would look like) strains credulity, particularly in light of Mills’ constant involvement and monitoring of this project and the lack of any contemporaneous protests in this regard.
Defendant similarly failed to establish the claim of negligent construction. In this regard, defendant called Patrick Fitzpatrick, a construction manager, as an expert.[3] This witness could not conclusively state what items were allegedly negligently performed by Formica. While there may be a “water problem” at the premises, no credible evidence was offered to prove that any work performed by Formica was the proximate cause of this condition. (See Rendinaro v City of New York, 254 AD2d 342 [2d Dept 1998].) Rather, at trial, Mr. Fitzpatrick could *407 not conclusively identify the cause of the leak, or where the water was, in fact, coming from.
Similarly, there was failure of proof with respect to damages. Defendant’s expert’s calculations as to what it would cost to repair or replace various items were speculative at best, and premised primarily on his “half day” visit to the premises and his review of the set of plans received as defendant’s exhibit B. Since there was no evidence even establishing the relevance of these plans to what the parties agreed would be constructed at the site, defendant’s expert’s reliance on them was misplaced. (See Wai Ming Ng v Tow, 260 AD2d 574 [2d Dept 1999] [damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes].)
For the reasons set forth herein, plaintiff is entitled to judgment in the amount of $12,000 with interest from June 15, 2001 at the rate of 8% per year as set forth in the note. Plaintiff’s request for reasonable attorneys’ fees is denied without prejudice to file a separate application with respect to same. Mills’ counterclaim is dismissed in its entirety.

. For instance, the payment contract schedule (plaintiff’s exhibit 3), which constitutes the alleged “contract” between the parties, indicates that it was between Formica Construction Co., Inc. and Mills Court Mass, Inc. No explanation was given as to the connection or relationship between Mills Court Mass, Inc. and Mossi Inn, Inc., the entity defendant now contends owned the premises.

. However, even if the court were permitted to look beyond the note itself, the result would not be different. At trial, Mills offered no credible evidence to show that Formica knew that Mills was signing the note solely in a representative capacity; that Formica agreed Mills would not be personally responsible for amounts due under the note; or that such an understanding was implicit in the course of dealing between these parties. In fact, the credible evidence at trial showed the contrary. The closing was postponed so Formica’s lawyer could draft the note and secure Mills’ signature, and Formica insisted Mills sign personally for the extras to ensure payment therefor.

. As indicated on the record, this witness was retained by defendant as an expert witness in this case after his first expert became unavailable. On the first day of Mr. Fitzpatrick’s appearance on March 30, 2005, he testified on direct examination and was being cross-examined when the court took a recess for lunch. Notwithstanding this court’s direction that cross-examination would resume at 2:30 that afternoon, the witness walked out of the courthouse and refused to return. It was only after this court ordered that he show cause why a contempt sanction should not issue that the witness returned the following day to resume his cross-examination. Plaintiff made an oral motion at the time to strike this witness’s testimony and reiterates this motion in its posttrial submission arguing Formica was denied the ability to perform an adequate cross-examination as the witness had the opportunity to prepare and analyze his previous answers. As this court finds Mr. Fitzpatrick’s testimony to be wholly unpersuasive, and for the reasons stated on the record, this court denies plaintiffs motion to strike.