■ PARIBAS PROPERTIES, INC., Appellant-Respondent, v STUART A. BENSON et al., Respondents-Appellants, et al., Defendant. (And Another Action.)—Judgment, Supreme Court,

New York County (Beatrice Shainswit, J.), entered February 5, 1988, which, *inter alia*, dismissed the complaint as against defendants-respondents-cross-appellants Stuart A. Benson and Consultant Property Management & Investors, Inc., and defendant William Landberg, unanimously modified, on the law, to the extent of reinstating the complaint against defendants-respondents-cross-appellants Benson and Consultant Property Management & Investors, Inc., and otherwise affirmed, without costs. The appeal from the order of said court entered January 4, 1988 is dismissed as subsumed under the appeal from the judgment entered February 5, 1988, without costs.

Plaintiff Paribas Properties, Inc. (Paribas), a New York corporation which provides consulting services to real estate investors, was approached by defendant Stuart A. Benson regarding the possible syndication to European investors of interests in a parcel of undeveloped land located near Colorado Springs, Colorado. Benson, the president and principal shareholder of defendants Consultant Properties International, Inc. (CPI) and Consultant Property Management & Investors, Inc. (CPMI), and William Landberg, who is also an officer and shareholder of these corporate defendants, together with business entities which they controlled, had acquired contractual rights to purchase part of the 1,800-acre tract owned by Aries Properties, Inc.

Following an initial meeting in Europe in the spring of 1986, and discussions in New York throughout the summer, Paribas agreed to investigate the possibility of organizing a private offering to European investors. It was to receive a nonrefundable fee of $250,000 and to be reimbursed for certain expenses incurred in connection with the transaction. A letter agreement dated September 5, 1986, addressed to Paribas, sets forth the substance of the parties' agreement. The letter recites that in recognition of Paribas' "efforts to date and to induce you to continue your discussions with us and your incurring of expenses in connection with your evaluation of the Property" CPI confirmed that it would pay a nonrefundable fee of $250,000 in five equal installments and reimburse Paribas for expenses on a monthly basis. In this letter CPI also acknowledges that "the entire $250,000 fee has been earned by you [Paribas] as of the date hereof" and that Paribas was under no obligation to enter into any agreement with respect to the property. The letter was signed by defendant Benson as "Chairman" of CPI.

After further negotiations between the parties, a second letter agreement dated October 24, 1986 was sent by CPI to

Paribas. The second letter modified certain terms stated in the September 5, letter, but it affirmed that the September 5 letter was otherwise to remain "unmodified and binding". The final paragraph of the October 24 letter reads: "Notwithstanding anything to the contrary contained herein or in the September 5, 1986 letter, all our obligations set forth herein and in the September 5, 1986 letter shall be joint and several obligations of us, Stuart A. Benson, William Landberg, and Consultant Property Management & Investors, Inc." This paragraph appears just above the signature of defendant Benson as "Chairman" of CPI.

After paying plaintiff $150,000, defendant failed to make further installments and plaintiff sued to recover the $100,000 balance of its fee and reimbursement for expenses incurred.

Defendants answered and interposed six counterclaims against plaintiff and against Banque Paribas, which defendants alleged was plaintiff's parent corporation. The papers submitted upon the motion and cross motion for summary judgment established that Banque Paribas owns no more than a 10% interest in plaintiff and was not a party to the transaction. William Landberg appeared to contest the assertion of personal jurisdiction over him because he had not been properly served. Supreme Court dismissed the complaint in its entirety as to Landberg and the counterclaims asserted against Banque Paribas, and these rulings are not challenged on appeal. The court also dismissed the complaint as to the defendants Benson and CPMI, finding that Benson's signature in his representative capacity as an officer of CPI could not bind him personally, nor could it bind CPMI as a corporate entity distinct from CPI. As to defendant CPI, the court granted plaintiff's motion for summary judgment dismissing its affirmative defenses and awarding Paribas judgment on the complaint.

We find, contrary to the arguments raised in defendants' cross appeal, that Supreme Court properly rejected the defenses of fraud in the inducement, breach of the agreement, and unjust enrichment, all of which were predicated on the assertion that Paribas had undertaken to deliver a written due diligence report to CPI. The record is devoid of any evidence, apart from Benson's uncorroborated assertion, that the delivery of such a written report was ever contemplated as part of the transaction. Moreover, the letter of September 5 plainly states that Paribas had earned its fee as of that date and the letter of October 24 reconfirms this.

The asserted Statute of Frauds defense is also unavailing.

To be enforceable, a special promise to answer for the debt or default of another must be in writing and subscribed to by the party against whom enforcement is sought (General Obligations Law § 5-701 [a] [2]). In this case, however, defendants Benson and CPMI did not undertake to guarantee payment in the event CPI defaulted, but to be primarily liable, jointly and severally, for payment of Paribas' fee and expenses. The fact that the debt already existed at the time defendants' promise was made is not significant. The liability of the promisor is to be determined by the nature of the promise, not when it was made *(see, Slavenburg Corp. v Rudes,* 86 AD2d 517, 518 [1st Dept 1982]). Consequently, given the nature of the promise contained in the last paragraph of the October 24 letter agreement, the defendants' subscription is not required for it to be binding upon them. What is required, however, is evidence of each defendant's intent to be bound thereby.

Under the long-standing rule in New York, an agent who signs an agreement on behalf of a disclosed principal will not be held responsible for its performance "unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal" *(Mencher v Weiss,* 306 NY 1, 4 [1953]; *Savoy Record Co. v Cardinal Export Corp.,* 15 NY2d 1, 4-6 [1964]; *Boas & Assocs. v Vernier,* 22 AD2d 561, 563 [1965]; *Matter of Jevremov [Crisci],* 129 AD2d 174, 176 [1987]). In *Salzman Sign Co. v Beck* (10 NY2d 63, 67 [1961]), the Court of Appeals pointed out the "great danger in allowing a single sentence in a long contract to bind individually a person who signs only as a corporate officer." The court in that case also noted the now "nearly universal" practice of having the officer sign twice—once in his representative capacity and again as an individual—where the corporate officer is to be held personally liable for his corporation's undertaking. Although defendant Benson only signed the letter agreements ostensibly in his capacity of chairman of defendant CPI, the record in this case persuades us that there is a triable issue as to whether defendant CPMI and Benson personally may be held as parties to the agreement on the basis of that one signature.

Unlike *Salzman Sign Co. v Beck (supra),* this is not a case in which a single sentence in a lengthy contract created a trap for an unwary agent. The printed form contract in *Salzman Sign Co.* did not specifically identify the defendant, but merely provided, in a boilerplate clause, that the officer or officers signing on behalf of the purchasing corporation personally guaranteed payment. The letter agreement of October 24 is

only three pages long and the critical paragraph appears distinctly just above the signature. It was a typewritten agreement, not a form contract of adhesion. The evidence establishes that this was a heavily negotiated agreement. Defendants rejected prior drafts of the final paragraph which had sought to hold all of Benson's and Landberg's business entities with an interest in the Colorado property jointly and severally liable on the obligations to Paribas. That language was deleted. Had defendants Benson and CPMI not wished to undertake such an obligation, their names as well could have been deleted from the final paragraph.

Unlike *Savoy Record Co. v Cardinal Export Corp.* (15 NY2d, *supra,* at 6) wherein the Court of Appeals noted the "anomalous character" of the guarantee provision, there was nothing equivocal or ambiguous in the language of the second letter agreement. It contained a straightforward promise that Benson, individually, and the two corporate defendants (which he had the authority to bind) would be jointly and severally liable for the debt to Paribas. Benson's failure to sign the letter more than once was not a "clearly expressed refusal" to assume the liability which his letter represented that he and CPMI had assumed, as was the case in *Matter of Jevremov (Crisci)* (129 AD2d, *supra,* at 177 [corporate officer's failure to sign contract containing arbitration clause a second time on line provided for his individual signature deemed a "clearly expressed refusal" to be bound thereby]).

For Benson, the president and principal shareholder of both CPI and CPMI, to now assert that he never intended to personally assume the obligation referred to in that final paragraph, nor did CPMI so intend, also raises questions as to the bona fides of this representation to Paribas and may give rise to an estoppel. *(See, Farr v Newman,* 18 AD2d 54, 60 [4th Dept 1963], *affd* 14 NY2d 183.) We therefore remand the matter for trial. Concur—Murphy, P. J., Carro, Asch, Rosenberger and Smith, JJ.