938 F.2d 2
 137 L.R.R.M. (BNA) 2778, 60 USLW 2092,
119 Lab.Cas. P 10,810
 Frank LERNER, Harold Lerner, Harvey Pulver, and Dominic
Dioguardi, Plaintiffs,
Frank Lerner, Plaintiff-Appellant,
v.
AMALGAMATED CLOTHING AND TEXTILE WORKERS UNION, and Washable
Clothing, Sportswear & Novelty Workers Local 169,
Amalgamated Clothing and Textile Workers
Union, AFL-CIO, CLC,
Defendants-Appellees.
 No. 1136, Docket 90-9012.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 25, 1991.
Decided June 25, 1991.
 
 Robert M. Schanzer, New York City (Matthew D. Stokely, Solomon & Rosenbaum, Drechsler & Leff, of counsel), for plaintiff-appellant.
 Jean Grumet, New York City (Joel Ronald Ax and George A. Kirschenbaum, Amalgamated Clothing & Textile Workers Union, of counsel), for defendants-appellees.
 Before OAKES, Chief Judge, and CARDAMONE and MAHONEY, Circuit Judges.
 OAKES, Chief Judge:
 
 
 1
 This case asks us to address whether, under New York law, the signature of the president of a corporation as president on a certificate of ratification that ratified a collective bargaining agreement bound the president individually to the terms of the collective bargaining agreement so as to render him personally liable for wages and benefits due under the agreement. Given the presumption against individual liability in such cases under New York Law, and the absence of evidence of the signatory's explicit intent to assume personal liability, we find that on these facts the president is not personally bound to the terms of the certificate of ratification.
 
 I. BACKGROUND
 
 2
 During the relevant period, Frank Lerner was the president and chief executive officer of TFM Industries, Inc. ("TFM"), a manufacturer of ladies' and children's garments that operated a plant in Jersey City, New Jersey. TFM was a member of the Infant and Juvenile Manufacturers Association (the "Association"), an organization composed of employers in the garment industry. The Association negotiates and executes collective bargaining agreements on behalf of its members with the Amalgamated Clothing and Textile Workers Union and the Washable Clothing, Sportswear & Novelty Workers Local 169 of the Amalgamated Clothing and Textile Workers Union (collectively the "Union"), the exclusive bargaining representative of bargaining-unit employees employed by members of the Association.
 
 
 3
 For many years, the Association and the Union have entered into successive collective bargaining agreements for three-year terms. The term of the collective bargaining agreement at issue here (the "Agreement") extended from October 16, 1987, to October 15, 1990. Paragraph 36 of the Agreement, entitled "Term of the Agreement," stated, in part:
 
 
 4
 This agreement shall be binding upon the officers and directors of each corporate Employer so that they shall be individually liable jointly and severally for the payment of past due wages, past due fringe benefits, past due checked-off dues and past due Health and Welfare contributions under this Agreement.
 
 
 5
 The actual signatories to the Agreement were the Union and the Association. The employer members of the Association became obligated under the Agreement by virtue of certificates of authorization and ratification that each member signed.
 
 
 6
 On November 17, 1987, Lerner signed such a certificate (the "Certificate"), thereby ratifying the Agreement on behalf of TFM.
 
 CERTIFICATE OF AUTHORIZATION AND RATIFICATION
 
 7
 The undersigned represents that he is a member of the INFANT & JUVENILE MANUFACTURERS ASSOCIATION, INC., that he authorizes the same Association to enter into a collective bargaining agreement with the WASHABLE CLOTHING, SPORTSWEAR & NOVELTY WORKERS LOCAL 169, of the AMALGAMATED CLOTHING & TEXTILE WORKERS UNION, that he ratifies the said agreement dated as of the 16th day of October, 1987 and agrees to be bound by the terms of said agreement for the term provided for therein with the same force and effect as if said agreement were signed by the undersigned individually and that the undersigned's obligations under said agreement shall, at the option of the Union, survive his membership, if for any reason his membership in the Association ceases prior to the expiration of the Agreement.
 
 Dated: 11-27-1987 T.F.M. Ind. FIRM
 
 8
 (PrintSU By: Frank Lerner
 
 
 9
 (Print) it's [sic] PresidenSU Frank Lerner
 
 
 10
 (SignatureSU _____
 
 
 11
 (Home addressDP1 On or about October 27, 1989, TFM closed its Jersey City plant and permanently laid off all of its remaining employees covered under the Agreement. Through a "Notice of Intent to Arbitrate" dated February 16, 1990, the Union notified TFM, Lerner and various other officers of TFM of its intent to arbitrate a number of claims arising under the Agreement.
 
 
 12
 Thereafter, Lerner and the other officers filed an action in federal district court pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Sec. 185, to stay arbitration against them in their individual capacities. Lerner and his co-plaintiffs filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The district court granted the motion with regard to all plaintiffs except Lerner, on the grounds that, as the signatory to the Certificate, Lerner bound both TFM and himself as an individual, whereas, as non-signatories, the other officers were not individually bound. The district court consequently stayed the Union from seeking to compel arbitration against Lerner's co-plaintiffs, but not against Lerner. Additionally, because it disposed of all of the issues raised by the complaint in ruling on the motion, the district court went on to dismiss the complaint in its entirety. Lerner now appeals from that judgment.
 
 II. DISCUSSION
 
 13
 The exact issue before us is whether Lerner signed the Certificate in his individual as well as his official capacity, thereby becoming individually bound to the terms of the Certificate, and by extension, the Agreement. We note that the Union does not contend that Lerner is personally bound to the terms of the Agreement based upon Paragraph 36 or any other provision of the Agreement itself. In any event, because an officer of the Association, not Lerner, signed the Agreement, any attempt to base Lerner's liability on one of the Agreement's terms would carry little weight.
 
 A. Governing Law
 
 14
 As a general matter, federal law governs disputes arising under section 301. See Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). However, state law, "if compatible with the purpose of Sec. 301, may be resorted to in order to find the rule that will best effectuate the federal policy." Id. Section 35 of the Agreement specifies that disputes arising under the Agreement will be governed by New York law. Moreover, the only federal case arguably on point here is an unpublished district court opinion, Mason Tenders Dist. Council Welfare Fund v. Deb-Kar Builders, Inc., 1987 WL 15130, 1987 U.S. Dist. LEXIS 6774 (S.D.N.Y.1987). We therefore turn to New York law to resolve this dispute.
 
 
 15
 B. Individual Liability of Corporate Officer Under New York Law
 
 
 16
 Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement "unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." Mencher v. Weiss, 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953). The rationale behind this rule is that, "[i]n modern times most commercial business is done between corporations," not individual stockholders or officers of the corporation, who, in many instances, own little or no stock in the corporation. Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 57, 176 N.E.2d 74, 76 (1961). An individual who is only an indirect beneficiary of the agreement thus should not be directly bound to the terms of the agreement absent clear evidence of an intent to create individual liability.
 
 
 17
 Applying this presumption, New York courts have found individual liability only in rare cases. For instance, in Paribas Properties, Inc. v. Benson, 146 A.D.2d 522, 536 N.Y.S.2d 1007 (1989) (1st Dept.), a New York court found personal liability only in the face of overwhelming evidence of the signatory's intention to assume personal liability, including: 1) the fact that the contract was only three pages long, and thus was not a trap for an unwary signatory; 2) that the paragraph that assigned personal liability appeared directly above the signature line; 3) that the signatory's name appeared in the agreement itself; 4) that the parties negotiated the agreement in depth; and 5) that the signatory was the president and principal shareholder in the corporation. See 146 A.D.2d at 525-26, 536 N.Y.S.2d at 1009-1010.
 
 
 18
 Unlike the situation in Paribas, the evidence of an assumption of individual liability is far from overwhelming here. While the Certificate employs the pronoun "he" with regard to the signatory, arguably connoting personal liability, it also states that "he is a member" of the Association, revealing that "he" must refer to TFM, because TFM, not Lerner, was the designated member of the Association. Moreover, the structure and content of the Certificate's signature lines also militate against individual liability. The signature lines first call for a printed designation of the firm name, TFM, and then, following the word "by," a signature of an individual, Lerner. In legal parlance, the employment of the word "by" means "[t]hrough the means, act, agency, or instrumentality of," see Black's Law Dictionary 182 (5th ed.1979), particularly when it is used preceding a signature. In other words, Lerner signed the agreement "on behalf of" TFM in his capacity as an agent of the corporation, and not on behalf of himself as an individual. Finally, our reading of Lerner's intent is also reinforced by the fact that, after he printed his name on the Certificate, he wrote "it's [sic] President," signifying that he intended to sign the document in his official capacity. Taken together, all of these facts strongly suggest that Lerner did not intend to assume personal liability, and we therefore find that Lerner is not personally bound to the terms of the Certificate.
 
 
 19
 Accordingly, the judgment of the district court is reversed and the Union is hereby stayed from seeking arbitration against Lerner in his individual capacity.
 
 
 20
 MAHONEY, Circuit Judge, concurring in part and dissenting in part.
 
 
 21
 I agree with the majority's reversal of the judgment of the district court, but would remand, rather than direct that the Union be stayed from seeking arbitration against Lerner in his individual capacity.
 
 
 22
 The district court concluded that "[t]he clear and indisputable language" of the certificate of authorization imposed liability upon Lerner. My colleagues read the certificate as pointing just as inexorably to the opposite conclusion. It seems to me, however, that this badly drafted document is ambiguous, and the underlying agreement only adds to the confusion.
 
 
 23
 The certificate refers to "[t]he undersigned" as "he" on three occasions, and alludes twice to "his membership." The underlying agreement purports in section 36 to bind the officers and directors of each corporate employer individually, and in section 14(e) to bar any officer or partner of a corporate employer from having any interest in a nonunion shop "producing items within the jurisdiction of the Union." I note also that of the five characteristics of Paribas Properties, Inc. v. Benson, 146 A.D.2d 522, 536 N.Y.S.2d 1007 (1st Dept.1989), specified by the majority as providing "overwhelming evidence of the signatory's intention to assume personal liability" in that case, every one is substantially replicated here except the inclusion of the signatory's name in the text of the agreement.
 
 
 24
 As we said in Bank of America Nat'l Trust & Sav. Ass'n v. Gillaizeau, 766 F.2d 709, 715 (2d Cir.1985): "Where contract language is ambiguous, the differing interpretations of the contract present a triable issue of fact. Summary judgment is therefore inappropriate.". See also Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir.1985) (where contractual language is susceptible of two fairly reasonable interpretations, summary judgment improper). I regard this rule as operative here, and therefore respectfully dissent from the majority's opinion insofar as it directs pretrial judgment for Lerner.