**Michael R. STROLL, Plaintiff,**

v.

**Jeffrey EPSTEIN, Defendant.**

**No. 92 Civ. 1021 (KC).**

United States District Court, S.D. New York.

April 15, 1993.

■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

Arthur M. Handler, Whitman & Ransom, New York City, for plaintiff.

Elliot Silverman, Gold & Wachtel, New York City, for defendant.

## ORDER

CONBOY, District Judge:

We have before us an action for breach of contract. Plaintiff Michael R. Stroll ("Stroll") seeks to recover from defendant Jeffrey Epstein ("Epstein") money allegedly owed pursuant to a contract in which Stroll relinquished his interest in a joint venture. Epstein asserts that he executed the contract in a representative capacity, as an agent for the venture and as an officer of the Intercontinental Asset Group ("I.A.G."), and that, therefore, he is not personally liable under the contract.

Pending before the Court are two motions: (1) defendant Epstein's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment;[1] and (2) plaintiff Stroll's cross-motion for summary judgment. For the reasons that follow, Epstein's motion for summary judgment is granted, and Stroll's cross-motion is denied.

### Discussion [2]

A. The November 1984 Contract

Defendant Epstein moves for summary judgment on the ground that the No-

---

1. As this Court will consider matters extrinsic to the complaint, we will treat defendant Epstein's motion to dismiss as a motion for summary judgment. See Fed.R.Civ.P. 12(b).

2. This Court has diversity jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a), as plaintiff Stroll is a citizen of Florida, defendant Epstein is a citizen of New York, and the sum in controversy is $440,000.

vember 1984 contract unambiguously indicates the parties' intention that Epstein was acting solely in a representative capacity when he agreed to return Stroll's capital contribution in the joint venture.[3]

■ "Under New York law,[4] ... the Court must look first to the parties' written agreement to determine the parties' intent and [must] limit its inquiry to the words of the agreement itself if the agreement sets forth the parties' intent clearly and unambiguously." *Sterling Drug Inc. v. Bayer AG,* 792 F.Supp. 1357, 1365 (S.D.N.Y.1992). *See also Chimart Associates v. Paul,* 66 N.Y.2d 570, 498 N.Y.S.2d 344, 346, 489 N.E.2d 231, 233 (Ct.App.1986) (Where a contract is unambiguous on its face, the Court may not consider evidence extrinsic to the contract to determine the parties' intent.). Whether a contract is ambiguous is a matter of law to be determined by the Court. *Sterling,* 792

F.Supp. at 1366. A contract is ambiguous if it is reasonably susceptible of more than one interpretation. *Chimart,* 498 N.Y.S.2d at 346, 489 N.E.2d at 233. Unambiguous contractual language is not rendered ambiguous "simply because the parties urge different interpretations in litigation." *Sterling,* 792 F.Supp. at 1366. Moreover, whether a contract is ambiguous is to be determined by considering the contract as a whole. *Wing v. Wing,* 112 A.D.2d 932, 492 N.Y.S.2d 450, 452 (2d Dep't 1985).

■ Applying the above-mentioned principles, this Court concludes that the November 1984 contract, when read as a whole, unambiguously indicates the parties' intention that Epstein was acting solely in a representative capacity when he agreed to return Stroll's capital contribution. The body of the contract makes clear that Epstein executed the

In a diversity action, a federal court sitting in New York must apply New York law, including New York's choice of law rules. *J & B Schoenfeld Fur Merchants, Inc. v. Kilbourne & Donahue, Inc.,* 704 F.Supp. 466, 468 (S.D.N.Y.1989). *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *see also Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Under New York's choice of law rules, when a court is construing the meaning of a contract, the Court should "apply the local law of that state which has the greatest interest in or the most significant relationship to the transaction and the parties." *See Index Fund, Inc. v. Ins. Co. of N. Am.,* 580 F.2d 1158, 1162 (2d Cir.1978), *cert. denied,* 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979). In the present action, the state with the most significant relationship to the transaction is New York: the contract being sued upon was executed in New York, defendant Epstein is a New York citizen, and I.A.G. is a New York corporation. Moreover, both parties agree that New York law applies in this case. Accordingly, we look to New York law to construe the meaning of the November 1984 contract.

3. Initially, we note that Epstein contends that this action is time-barred pursuant to N.Y. C.P.L.R. § 213(2) (McKinney 1990), which provides a six-year statute of limitations for breach of contract claims. Stroll contends that the statute of limitations was tolled as he received a $10,000 personal check from Epstein in May of 1988, accompanied by Epstein's promise to pay more of the debt upon his receipt of personal funds. *See Commissioners of the State Ins. Fund v. Warner,* 156 A.D.2d 131, 548 N.Y.S.2d 883, 883 (1st Dep't 1989) (stating the common law rule that the statute of limitations will be tolled if

the creditor can show that the payment "was a payment of a portion of the admitted debt ... accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder."). Epstein asserts that he paid Stroll $10,000 because Stroll had purchased a horse for him. Epstein presents no evidence of this purchase, though. Because all reasonable inferences on a summary judgment motion are to be drawn in favor of the non-moving party, *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), we hold that the present action is not time-barred for the purposes of this motion.

4. Stroll contends that § 3–403(2)(b) of the New York Uniform Commercial Code should govern our interpretation of the November 1984 contract. *See* N.Y.U.C.C. § 3–403(2)(b) (McKinney 1991). We disagree. Section 3–403 governs negotiable instruments. *Finnish Fur Sales Co. v. Juliette Shuloff Furs, Inc.,* 770 F.Supp. 139, 147 (S.D.N.Y.1991); *Rotuba Extruders, Inc. v. Ceppos,* 46 N.Y.2d 223, 413 N.Y.S.2d 141, 143, 385 N.E.2d 1068, 1070 (Ct.App.1978). As Stroll concedes, the present contract is not a negotiable instrument because it is not "payable to order or to bearer." *See* N.Y. U.C.C. · § 3–104(1)(d) (McKinney 1991). We have found no case which applies § 3–403(2)(b) to a non-negotiable instrument. Moreover, at least one New York court has specifically held that if the contract being sued upon is a not a negotiable instrument, § 3–403 cannot be applied to determine whether an agent executed the contract in an individual capacity. *Pepsi–Cola Buffalo Bottling Corp. v. Wehrle Drive Supermarkets,* 123 A.D.2d 515, 507 N.Y.S.2d 107, 108 (4th Dep't 1986).

contract in a representative capacity. In one sentence, the contract states that the November 1984 contract shall consist of terms and conditions verbally agreed upon on September 10, 1984. In an adjacent sentence, the contract states that the following agreement was reached on September 10, 1984: *"in your capacity as both an officer of Intercontinental Asset Group and as agent for the joint venture* you verbally agreed to accept my rescission of my acquisition of the joint venture *ab initio,* and my tender to you of all my interests in the venture and you are to return all amounts contributed by me to the venture...." (emphasis added). Read together, these two sentences clearly indicate that the November 1984 contract was executed by Epstein in his representative capacity.

Stroll asserts that the above-quoted sentence demonstrates that Epstein acted in a representative capacity only when he agreed to accept Stroll's demand for rescission, and that Epstein personally agreed to buy out Stroll's interest in the venture. We find Stroll's interpretation of this sentence strained and unreasonable as there is nothing in the sentence to indicate that the phrase "in your capacity as ... an officer ... and as agent...." does not apply to the entire sentence.

In an attempt to establish Epstein's personal liability, Stroll points to selected phrases of the contract which use personal pronouns to refer to Epstein (e.g., "I hereby accept your demand for rescission and tender upon the terms and conditions contained herein."). However, the very first time the contract uses a personal pronoun to refer to Epstein, the contract states, *"in your capacity as both an officer of Intercontinental As-*

*set Group and as agent for the joint venture you ...* agreed to accept my rescission of my acquisition ... and my tender to *you* of all my interests in the venture and *you* are to return all amounts contributed by me to the venture...." (emphasis added). This sentence indicates that when the contract, after this sentence, uses only personal pronouns to refer to Epstein, it is referring to Epstein in a representative capacity.

 Finally, Stroll argues that Epstein's signature on the contract reveals the parties' intention to hold Epstein personally liable because Epstein did not sign the contract as an agent or as a corporate officer. Epstein signed the contract as follows: /s/ *Jeffery Epstein I.A.G.* Under New York law, a signature in a representative capacity would have been "Jeffrey Epstein for I.A.G." or "I.A.G., by Jeffrey Epstein". 2 N.Y.Jur. 2d, Agency, § 181. However, under New York common law principles of agency, which govern this contract,[5] a contract which demonstrates on its face that the defendant was acting solely in a representative capacity will not be rendered ambiguous simply because the defendant failed to sign the contract in a representative capacity. *See Stylianides v. De Lorean Motor Co.,* 115 Misc.2d 861, 454 N.Y.S.2d 799, 800 (N.Y.Sup.Ct.1982); 2 N.Y.Jur.2d §§ 180, 182. *See generally Ell Dee Clothing Co., Inc. v. Marsh,* 247 N.Y. 392, 395, 160 N.E. 651 (Ct.App.1928) ("[W]here one party to a written contract is known to the other party to be in fact acting as agent for some known principal, he does not become personally liable whether he signs individually or as [an] agent."). Accordingly, because the body of the contract clearly indicates that Stroll knew, or should

---

5. Under New York common law, an agent for a disclosed principal will not be held personally liable " 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his own personal liability for, or to, that of his principal.' " *Paribas Properties, Inc. v. Benson,* 146 A.D.2d 522, 536 N.Y.S.2d 1007, 1008 (1st Dep't) (*quoting Mencher v. Weiss,* 306 N.Y. 1, 4, 114 N.E.2d 177 (Ct.App.1953)). As stated in *Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 217 N.Y.S.2d 55, 57, 176 N.E.2d 74, 76 (Ct.App. 1961), the rational underlying this presumption against personal liability was the "great danger

in allowing a single sentence in a long contract to bind individually a person who sign[ed] only as a corporate officer." Other cases have applied this presumption even where the contract was only a page or two long and where the agent signed in an individual capacity. *See, e.g., Shoenthal v. Bernstein,* 276 A.D. 200, 93 N.Y.S.2d 187, 188–90 (1949). Accordingly, we hold that New York common law governs the present case, where the contract was only one and a half pages long, and where the defendant signed in an individual capacity.

have known,[6] Epstein was acting in a representative capacity, the failure of Epstein's signature to meet the technical requirements of a representative signature is insufficient to render the contract ambiguous as to the parties' intent.

Based on the above analysis, the Court concludes that the November 1984 contract, when read as a whole, is unambiguous on its face and indicates the parties' intention that Epstein was acting in a representative capacity when he agreed to return Stroll's capital contribution.

Stroll, however, seeks to introduce extrinsic evidence to generate ambiguity in the contract. Specifically, Stroll seeks to introduce a prior written contract executed by Stroll, I.A.G., and Epstein on June 18, 1982. Stroll argues that an interpretation of the November 1984 contract as imposing personal liability on Epstein would be consistent with Epstein's assumption of personal liability under the June 1982 contract.

■ As noted above, if a contract is unambiguous on its face, extrinsic evidence may not be presented to create an ambiguity in the contract. Therefore, Stroll cannot introduce the June 1982 contract to create an ambiguity in the November 1984 contract.

■ However, even if we consider the June 1982 contract, our conclusion that the November 1984 contract is unambiguous and does not establish personal liability remains unchanged. The June 1982 contract is a modification of Stroll and I.A.G.'s original joint venture agreement, with one of the modifications making Epstein personally responsible for managing the affairs of the joint venture. The contract makes no mention of any future refund of Stroll's capital contribution, or of a buy out in the event of a rescission.

The relevant provisions of the June 1982 contract are:

The purpose of this letter is to ... modify certain provisions of the Joint Venture agreement which will continue to be operative.

The following will constitute our agreement:

1. For all purposes *hereof* and in respect of the management of the affairs of the Joint Venture *as hereinafter provided,* Jeffrey E. Epstein ("Epstein") shall act on behalf of I.A.G. and notwithstanding the separate legal existence of I.A.G., as between the parties hereto, I.A.G. and Epstein shall be treated as one and the same.

(emphasis added). The definition of "hereof" is "of this" (i.e., of this agreement). *See* THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 664 (1st ed. 1966). Therefore, the June 1982 contract, when read in the light most favorable to Stroll, merely makes Epstein liable for the purposes of the modified joint venture agreement. A buy out was not a purpose of the modified joint venture agreement. Therefore, the June 1982 contract cannot be construed as imposing personal liability on Epstein in the event of I.A.G. buying out Stroll's interest in the joint venture.

B. Parole Evidence

■ Where the parties have expressed their agreement in an unambiguous and integrated writing, "the parole evidence rule operates to exclude evidence of all prior and contemporaneous negotiations or agreements offered to contradict or modify the terms of their writing." *Adler & Shaykin v. Wachner,* 721 F.Supp. 472, 476, 479 (S.D.N.Y.1988). A writing is integrated if it "completely and accurately embodies all the mutual rights and obligations of the parties." *Id.* at 476. New York law provides that a " 'contract which appears complete on its face is an integrated agreement as a matter of law.' " *Happy Dack Trading Co., Ltd. v. Argo Industries, Inc.,* 602 F.Supp. 986, 991 (quoting Battery S.S. Corp. v. Refineria Panama, S.A., 513 F.2d 735, 738 n. 3 (2d Cir. 1975)). The parole evidence rule serves to protect a party to a written contract from infirmity of memory, perjury, or the death of witnesses. *Adler,* 721 F.Supp. at 476.

■ We have examined the November 1984 contract and find it to be a complete integration of the parties' agreement. *See*

---

6. The Court observes that the November 1984 contract was drafted by Stroll's attorneys.

*Id.* at 476–478. Moreover, even the plaintiff does not contest that the November 1984 contract is a complete integration.

Stroll seeks to introduce evidence that during the September 10, 1984 meeting at the office of Stroll's attorney, Epstein orally promised to personally repay Stroll's capital contribution. In addition, Stroll seeks to introduce evidence that at the November 15, 1984 meeting, Epstein took Stroll aside and orally reiterated his personal promise to return Stroll's capital contribution. However, the evidence Stroll seeks to present directly contradicts the unambiguous terms of the November 1984 contract. The contract states that, "[o]n September 10, 1984, you [Epstein] and I [Stroll] met in the law office of Henry M. Grannan.... During the course of this meeting, *in your capacity as both an officer of Intercontinental Asset Group and as an agent for the joint venture* you verbally agreed to accept my rescission ... and my tender to you of all my interests ... and you are to return all amounts contributed by me...." (emphasis added). Moreover, the November 1984 contract states that the terms of the November 1984 contract are the same as those agreed upon at the September 10, 1984 meeting. Therefore, because the evidence Stroll seeks to present contradicts the unambiguous terms of the integrated November 1984 contract, this evidence is inadmissible under the parole evidence rule.

**C. Subsequent Conduct**

 Stroll asserts that in May 1988, Epstein made a part payment on the debt of $10,000, by personal check. Stroll also asserts that in September 1991, Epstein promised to pay him $75,000 from a fee Epstein was expecting to receive. Epstein concedes

that he paid Stroll $10,000, but claims that he paid this money to Stroll because Stroll had purchased a horse for him. Moreover, Epstein asserts that at no time subsequent to the execution of the November 1984 contract did he ever promise to personally repay Stroll's capital contribution.

▉ Where a contract is unambiguous on its face, evidence of conduct occurring subsequent to the execution of the contract may not be introduced to create ambiguity in the contract. *See Allied Chemical Corporation v. Alpha Portland Industries,* 58 A.D.2d 975, 397 N.Y.S.2d 480, 482 (4th Dep't 1977). Therefore, even if we view the evidence in the light most favorable to Stroll, a partial payment or a promise to pay personally made by Epstein subsequent to the execution of the November 1984 contract cannot make Epstein personally liable under the November 1984 contract.

Because Epstein has established that he is not personally liable under the November 1984 contract, he has met his burden of establishing that there is no genuine issue of material fact.[7]

**Conclusion**

The Court finds that the November 1984 contract unambiguously indicates that defendant Epstein was acting solely in a representative, and not in a personal, capacity. Accordingly, Epstein's motion for summary judgment is granted, and Stroll's motion for summary judgment is denied. The Clerk of the Court is directed to enter judgment in favor of the defendant.

SO ORDERED.

7. In order to establish that there is a genuine issue of material fact, Stroll may introduce evidence of conduct subsequent to the November 1984 contract either to establish that a novation occurred, or to show that, at some time subsequent to the November 1984 contract, Epstein agreed to personally guarantee I.A.G.'s debt.

A novation is not enforceable absent consideration. *Kasper v. Roberts,* 119 Misc.2d 829, 464 N.Y.S.2d 642, 644 (N.Y.Civ.Ct.1983). Moreover, an oral promise to guarantee the debt of another is not enforceable if the party making the guarantee did not receive "new consideration which

... is beneficial to him." *Karl Ehmer Forest Hills Corp. v. Gonzalez,* 159 A.D.2d 613, 553 N.Y.S.2d 22, 23 (2d Dep't 1990). We hold that Epstein's check does not constitute a written promise to guarantee the remainder of I.A.G.'s debt because the check was for only $10,000, and had no other written notation on it. Therefore, even viewing the evidence in the light most favorable to Stroll, he has presented no evidence that Epstein received consideration for his part payment, or for his promise subsequent to the November 1984 contract to personally refund the remainder of Stroll's capital contribution.