**MASON TENDERS DISTRICT COUNCIL WELFARE FUND, Pension Fund, Annuity Fund, Asbestos Training Program Fund, Industry Fund, Legal Services Fund, Vacation Fund, New York State Laborers–Employers Cooperation and Education Trust Fund, New York Laborers' Health and Safety Trust Fund, and Building Contractors Association Industry Advancement Program, and Paul V. Ragone, in his fiduciary capacity as Director, and James Lupo, as President of The Mason Tenders District Council of Greater New York, Plaintiffs,**

v.

**UNITED CITY CONTRACTING INC. and Daniel Palmadessa, Defendants.**

No. 94 Civ. 5302 (MGC).

United States District Court,
S.D. New York.

May 17, 1996.

Mysak, Gorlick, Kravitz & Listhaus, P.C., by Michael J. Vollbrecht, Andrew A. Gorlick, New York City, for Plaintiffs.

Gutman & Gutman by S. Mac Gutman, Halima Akhtar–Gutman, Forest Hills, New York, for Defendant Daniel Palmadessa.

*MEMORANDUM OPINION
AND ORDER*

CEDARBAUM, District Judge.

Plaintiffs bring this action pursuant to section 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) & 1145 (1994), and pursuant to section 301 of the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185 (1994), to recover fringe benefit contributions, union dues check-offs and political action committee contributions from Daniel Palmadessa, a former Vice President and fifty-percent shareholder of United City Contracting Inc. and a signatory to various collective bargaining agreements between United City and the Mason Tenders District Council of Greater New York ("the Union"). Palmadessa has moved to dismiss the complaint and plaintiffs have moved for summary judgment. Because the parties have had an opportunity to present materials to supplement the pleadings, I will also treat Palmadessa's motion to dismiss as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, plaintiffs' motion is denied and Palmadessa's motion is granted.

*Undisputed Facts*

(1) Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Asbestos Training Program Fund, Industry Fund, Legal Services Fund and Vacation Fund, the New York State Laborers–Employers Cooperation and Education Trust Fund, the New York Laborers' Health and Safety Trust Fund and the Building Contractors Association Industry Advancement Program are jointly administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements and trust agreements in accordance with section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5) (1994). The Funds are employee benefit plans within the meaning of sections 3(1), 3(2), 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(1), (2), (3) & 1132(d)(1) (1994), and multi-employer plans within the meaning of sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37) & 1145 (1994).

(2) The Union is a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185, which represents employees in an industry affecting commerce as defined in section 501 of the LMRA, 29 U.S.C. § 142 (1994), and section 3(4) of ERISA, 29 U.S.C. § 1002(4) (1994).

(3) United City is a domestic corporation doing business in the City and State of New York as an employer within the meaning of section 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) & 1145 (1994), and is an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

(4) At all times relevant, Palmadessa was the Vice President and fifty-percent owner of United City.

(5) Palmadessa executed a collective bargaining agreement with the Union for the period June 1, 1987 to May 31, 1990 ("the 1987 Agreement").

(6) Under the 1987 Agreement, United City was obligated to contribute to the Welfare Fund, Pension Fund, Annuity Fund, Asbestos Training Program Fund, Industry Fund, Legal Services Fund and the Building Contractors Association Industry Advancement Program, and to remit union dues check-offs and New York Laborers' Political Action Committee ("NYLPAC") contributions.

(7) The signature clause of the 1987 Agreement provides:

IN WITNESS WHEREOF the parties hereto have set their hands the day and year set forth below. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Trade Agreement and he warrants and represents that he has authority to bind the Employer and the principals or members thereof.

(Palmadessa Aff., Exh. B at 23.)

(8) Palmadessa executed a collective bargaining agreement with the Union for the period June 1, 1990 to May 31, 1993 ("the 1990 Agreement").

(9) The 1990 Agreement provides that it "incorporates all terms and conditions of the prior Trade Agreement between the Union and an Employer of Mason Tenders, effective for the period commencing June 1, 1987 and which terminated on May 31, 1990 ... except as modified herein." (*Id.*, Exh. C at 1.) The modifications in the 1990 Agreement generally concern the rates for wages, fringe benefit contributions, union dues check-offs and NYLPAC contributions. The 1990 Agreement also includes a change in the work rules regarding the provision of temporary heat at construction sites.

(10) The signature clause of the 1990 Agreement provides:

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed this day and year by their duly authorized officers, and represent to each other that they were duly authorized to enter into this Agreement.

(*Id.* at 2.)

(11) Palmadessa executed a collective bargaining agreement with the Union for the period June 1, 1993 to May 31, 1996 ("the 1993 Agreement").

(12) The 1993 Agreement provides that it "incorporates all terms and conditions of the prior Trade Agreement between the Union and an Employer of Mason Tenders, effective for the period commencing June 1, 1990 and which terminated on May 31, 1993 ... except as modified herein." (*Id.*, Exh. D at 1.) In addition to various work rule changes, the 1993 Agreement modified the rates for wages, fringe benefit contributions, union dues check-offs and NYLPAC contributions. The 1993 Agreement also required for the first time that United City contribute to the Mason Tenders District Council Vacation Fund, the New York State Laborers–Employers Cooperation and Education Trust Fund and the New York State Health and Safety Trust Fund.

(13) The signature clause of the 1993 Agreement provides:

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be signed this day and year by their duly authorized officers, and represent to each

other that they were duly authorized to enter into this Agreement.

(*Id.* at 6.)

### Discussion

The principal issue raised is whether Palmadessa is personally liable for payments due under the 1990 and 1993 Agreements. Plaintiffs claim that for the period January 1, 1993 through December 28, 1993 they are owed fringe benefit contributions, union dues check-offs and NYLPAC contributions under the terms of the 1990 and 1993 Agreements. Plaintiffs argue that Palmadessa is personally liable for these amounts because the personal liability provision in the signature clause of the 1987 Agreement was incorporated by reference into the 1990 and 1993 Agreements.

■ The Court of Appeals for the Second Circuit has recognized that although as a general matter federal law governs disputes arising under section 301 of the LMRA, state law, if compatible with the purpose of section 301, may be consulted in order to find the rule that will best effectuate the federal policy. *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991). "Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Id.* (quoting *Mencher v. Weiss*, 306 N.Y. 1, 4, 114 N.E.2d 177, 179 (1953)); *see also Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 36–37 (2d Cir. 1994) (section 515 of ERISA permits recovery against corporate officers who personally obligate themselves to make pension contributions).

■ Palmadessa argues that he is not liable under the 1987 Agreement because the signature clause was not on the same page as his signature and that he was not aware that he was assuming personal liability when he signed the 1987 Agreement. The 1987 Agreement is printed in booklet form. The signature clause is on the page immediately preceding and facing the signature page. Absent an allegation of fraud, Palmadessa is presumed to have read the agreement he was signing, including the page immediately preceding and facing the page on which he signed his name. Thus, Palmadessa was personally liable for United City's obligations under the 1987 Agreement. *See, e.g., Lollo*, 35 F.3d at 35; *Mason Tenders Dist. Council Welfare Fund v. John's Insulation, Inc.*, No. 93 Civ. 4948 (SAS), 1995 WL 527764, at *6 (S.D.N.Y. Sept. 7, 1995); *Mason Tenders Dist. Council Welfare Fund v. Pistone*, No. 90 Civ. 3852 (LJF), 1992 WL 204377, at *4 (S.D.N.Y. Aug. 13, 1992).

■ Palmadessa argues more persuasively that the signature clause in the 1987 Agreement was modified in the 1990 and 1993 Agreements by the elimination of any reference to personal liability. Plaintiffs cite *Pistone* for the proposition that Palmadessa can be held personally liable because he signed the 1990 and 1993 Agreements. In *Pistone*, the defendant signed a three-year collective bargaining agreement on behalf of a corporation of which she was an officer and fifty-percent owner. *Pistone*, 1992 WL 204377, at *1. Like the 1987 Agreement at issue here, the agreement signed by the defendant in *Pistone* was in booklet form and contained a provision binding the signatory personally for the corporation's obligations. *Id.* Thereafter, the defendant signed two documents that extended the original agreement "as herein modified" for six more years. *Id.* at *2. A review of the record in *Pistone* reveals that neither of the documents extending the original agreement contained a signature clause. There was a line for the defendant's signature, but no preceding "IN WITNESS WHEREOF" clause as there had been in the original agreement. (Ello Aff., Exh. B & C.) Under these circumstances, the court in *Pistone* found that the parties had not modified the personal liability provision contained in the signature clause of the original agreement, and concluded that the defendant continued to be personally liable for the obligations of the corporation incurred during the six-year extension. *Pistone*, 1992 WL 204377, at *4.

212

By contrast, the signature clauses in the 1990 and 1993 Agreements modified the signature clause of the 1987 Agreement by removing all reference to Palmadessa's personal liability. If the parties intended that Palmadessa would continue to be personally liable for United City's obligations under the 1990 and 1993 Agreements, they could have used the same language that was used in the 1987 Agreement. Plaintiffs have not proffered any evidence that when he signed the 1990 and 1993 Agreements Palmadessa intended to add his personal liability to the liability of United City. Accordingly, Palmadessa is not personally liable for United City's obligations under the 1990 and 1993 Agreements.

### *Conclusion*

For the reasons discussed above, plaintiffs' motion for summary judgment is denied and Palmadessa's motion for summary judgment is granted.

SO ORDERED.