**MASON TENDERS DISTRICT COUNCIL WELFARE FUND, Pension Fund, Annuity Fund, Training Program Fund, New York State Laborers–Employers Cooperation and Education Trust Fund, New York Laborers Health and Safety Trust Fund, Building Contractors**

---

Association Industry Advancement Program, John J. Virga, in his capacity as Director, Anthony Silvestri, as Business Manager of the Mason Tenders District Council of Greater New York, Plaintiffs–Appellants,

v.

THOMSEN CONSTRUCTION COMPANY, INC. and Stephen Thomsen, Defendants–Appellees.

Docket No. 01–9225.

United States Court of Appeals, Second Circuit.

Argued: June 17, 2002.

Decided: Aug. 21, 2002.

David M. Fish, Rosen, Leff, Esqs., Hempstead, NY, for Plaintiffs–Appellants.

Michael J. Vollbrecht, Gorlick, Kravitz & Listhaus, New York, NY, for Defendants–Appellees.

Before CALABRESI, SACK, B.D. PARKER, Circuit Judges.

PER CURIAM.

Plaintiffs, a combination of jointly administered, multi-employer, labor-management trust funds (the "funds") that were established and maintained pursuant to various collective bargaining agreements, brought suit against Defendant Thomsen Construction Co., Inc. and its owner, Defendant Stephen Thomsen. Plaintiffs, claiming that Defendants had violated a collective bargaining agreement by ceasing to make contributions to the Funds, sought a judgment for the delinquent contributions and unremitted dues. The parties conceded liability on Thomsen Construction's part. Following a bench trial, Magistrate Judge Ronald L. Ellis held,[1] in an opinion and order dated September 10, 2001, that Defendant Thomsen was not personally liable for his company's failure to make the required contributions to the Funds. Plaintiffs appeal.

## BACKGROUND

In 1994, Thomsen organized Thomsen Construction. Thomsen, who served as President of the company, was approached by Mason Tenders Local 79 in June 1996 and asked to sign an independent collective bargaining agreement. The agreement required Thomsen Construction to make contributions to the Funds from June 1, 1996 to June 30, 1999. Thomsen was provided with an 18–page contract, and, according to Thomsen, the representatives intimated to him that there might be some kind of job action if he did not sign the contract. It is undisputed that there were no negotiations with respect to any part of the agreement. A paragraph including a clause purporting to impose personal liability appears on the signature page. It is the only paragraph on that page and it is directly above the signature line. The paragraph states in its entirety:

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed this day and year by their duly authorized officers, and represent to each other that they were duly authorized to enter into this Agreement. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Agreement and he warrants and represents that he has the authority to bind the Employer and the principals or members thereof.

Thomsen claims to have read most of the agreement but not the personal liability provision. The first signature line of the agreement called for the company's name, which was duly written in. Thomsen signed the next line. His signature was preceded by the word "by" and, under his signature, Thomsen's name is printed and followed by a hyphen and the word "president." Thus the signature lines look as follows:

*Thomsen Construction* [printed by hand]

Print Firm Name

By: [Signature written in]

*Stephen Thomsen—President* [printed by hand]

suant to 28 U.S.C. § 636(c).

---

**1.** The parties consented to have the matter heard and decided by a magistrate judge pur-

Print Name and Title

In late 1998, Thomsen Construction went out of business and, in due course, payments ceased being made to the Funds. The Funds filed the instant action pursuant to § 301 of the Labor Management Relations Act ("LMRA") and § 1132(d)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). *See* 29 U.S.C. § 185(a) (allowing claims for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce); 29 U.S.C. § § 1001 *et seq.* (authorizing the relevant funds to bring suit as independent legal entities). On March 12, 2001, a bench trial was held before Magistrate Judge Ellis, upon stipulation of the parties pursuant to 28 U.S.C. § 636(c).

## DISCUSSION

█ Federal law governs disputes arising under § 301. *See Lerner v. Amalgamated Clothing & Textile Workers Union,* 938 F.2d 2, 5 (2d Cir.1991) (citing *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). As this Court held in *Lerner,* however, "state law, 'if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy.' " *Id.* (quoting *Lincoln Mills,* 353 U.S. at 457, 77 S.Ct. 912). Accordingly, New York law guides the analysis in this case. *See generally id.* (applying New York law to resolve the question whether a collective bargaining agreement imposed personal liability on

the signatory); *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,* 35 F.3d 29, 35 (2d Cir.1994) (same).

█ New York law requires that there be "clear and explicit evidence" of the defendant's intent to add personal liability to the liability of the entity, where entity liability is established under the agreement. *Lerner,* 938 F.2d at 5 (quoting *Mencher v. Weiss,* 306 N.Y. 1, 4, 114 N.E.2d 177 (1953)). As this Court has explained, "New York courts have found individual liability only in rare cases" since there must be "overwhelming evidence of the signatory's intention to assume personal liability." *Id.* This rule is supported by the rationale that " '[i]n modern times most commercial business is done between corporations,' not individual stockholders or officers of the corporation." *Id.* (quoting *Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 176 N.E.2d 74 (1961)).

█ In considering whether there is sufficient evidence of intent, the *Lollo* court, applying New York law, set forth certain factors to be considered: the contract's length, the location of the liability provision relative to the signature line, the presence of the name of the signatory in the contract itself, "the nature of the negotiations leading to the contract," and the signatory's role in the corporation. *Lollo,* 35 F.3d at 35.[2]

█ Plaintiffs' arguments to the contrary[3] notwithstanding, the district court properly focused its analysis on the *Lollo*

---

**2.** These factors were taken from the analysis in *Lerner,* which had described the factors deemed relevant by the state courts. *Lerner,* 938 F.2d at 4 (citing *Paribas Properties, Inc. v. Benson,* 146 A.D.2d 522, 536 N.Y.S.2d 1007 (1989)).

**3.** Plaintiffs argue that the district court wrongly considered such issues as whether

Thomsen's signature was involuntary and whether he was under duress. There is no serious indication in the court's decision that it relied on such factors in reaching its conclusion. Furthermore, the court's analysis of the *Lollo* factors alone would provide a solid basis for its conclusion.

factors and, after a bench trial, concluded, in light of those factors, that the high degree of intention—which goes beyond the mere presence of a personal liability clause in the signed agreement—was not met. We see no reason to reverse the district court. We note further that the New York Court of Appeals has observed that "where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual." *Salzman*, 10 N.Y.2d at 67, 217 N.Y.S.2d 55, 176 N.E.2d 74. We have never held that two signatures are required. *See Lollo*, 35 F.3d at 35 (holding collective bargaining agreement imposed personal liability on signing officer under the facts of that case despite absence of separate signature of the officer in his personal capacity). But we think that the appearance of only one signature, especially when that signature is in Thomsen's official capacity, further supports the soundness of the district court's decision. *Cf. Lerner*, 938 F.2d at 5.

A theory seemingly underlying Plaintiffs' claims is that New York law addressing personal liability in corporate agreements should operate differently in the labor relations context. But, as noted above, state law will apply to disputes arising under § 301 unless it is inconsistent with federal policy. We are not prepared to conclude that an inconsistency exists that would warrant our applying state law differently in this context.

We have considered all of Appellants' claims and find them to be without merit. The judgment of the district court is hereby AFFIRMED.